## BUTTS v. THE ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY, *Appellant.*

**Railroads:** NEGLIGENCE: PERSONAL INJURY. One who goes upon a railroad track, at a crossing, without looking or listening for a train, when by looking the approaching train could have been seen, and who is struck immediately upon stepping on the track, is guilty of such contributory negligence as will preclude a recovery, notwithstanding the negligence of the train men in operating and managing the train.

*Appeal from Jefferson Circuit Court.*—HON. JOHN L. THOMAS, Judge.

REVERSED.

*Thos. J. Portis* and *Geo. H. Benton* for appellant.

(1) The petition fails to state facts sufficient to constitute a cause of action. *State ex rel. v. Carroll*, 63 Mo. 156; *Field v. Railroad*, 76 Mo. 614; *Price v. Railroad*, 72 Mo. 414.

*Dinning & Byrns* for appellant.

(1) The petition states a cause of action. (2) The court did right in overruling defendant's demurrer to

plaintiff's testimony. *O' Connor v. Railroad*, 94 Mo. 150; *Buesching v. Gas Light Co.*, 73 Mo. 219; *Step v. Railroad*, 85 Mo. 229; *Petty v. Railroad*, 88 Mo. 320; *Zimmerman v. Railroad*, 71 Mo. 476; Shearman & Redf. on Neg. (3 Ed.) sec. 31; *Brown v. Railroad*, 32 N. Y. 597; *Kay v. Railroad*, 65 Pa. St. 269; *Butler v. Railroad*, 28 Wis. 487; *Railroad v. Sweeney*, 52 Ill. 325.

RAY, C. J.—This is an action to recover five thousand dollars damages for the death of plaintiff's wife, which was caused by one of defendant's trains, whilst passing through the town of DeSoto, Missouri, and at a public crossing over the railroad tracks in said town.

Defendant has appealed from the verdict and judgment, for said sum, in favor of plaintiff. The answer contained, first, a general denial; second, contributory negligence, on part of the deceased; the replication was a general denial to new matter.

Defendant offered no evidence in its own behalf, but at the close of the evidence for plaintiff, asked an instruction in the nature of a demurrer to the evidence, which the court refused, and the exception taken by defendant, in this behalf, is now urged in this court, as error, requiring a reversal of the judgment in the cause.

The evidence shows that there were some six or seven different tracks, being the main track on the west, and the several side tracks, comprising the switch-yards, extending from north to south through, or nearly through, the length of said town of DeSoto, and that the public crossing in question, over said tracks is about or near the middle of said yards, the tracks themselves being generally straight or without curves, except such as are necessary to join and connect the said tracks, and that the tracks have considerable down grade, from south to north at this point. The train, which was, it seems, an ordinary freight train, was at the time of the injury, coming from the south, without the engine

VOL. 98—18

attached, the same having been, as the evidence shows, "cut off," or detached several hundred yards, perhaps, south of the said crossing. After thus cutting the train in two, the employes switched an engine in on the first track coming from the east, whilst the train was switched onto the "scale track," or second track from the west, leaving four remaining tracks, between the track, on which the engine passed and the one on which the train ran. These intermediate tracks were filled, or blocked, with cars up to the crossing, or nearly so, and these cars on the intermediate tracks, which were both box and flat cars, largely obstructed the view of the approaching trains, from the south at least, so far as parties approaching from the east were concerned. No bell was rung or whistle sounded, the engine having been detached as aforesaid. The evidence further shows, that the train in running on the down grade of this track, with its own momentum ( the track being smooth ), made less noise, than was ordinarily incident to moving trains of this sort.

The petition, we may observe in this behalf, was not based upon any alleged violation of any city or town ordinance, but alleged and charged defendant with negligence, in so detaching the engine from the train, and permitting the latter to be so run, without any means of warning, such as the bell or whistle of the engine would have afforded, and with negligence also, in crowding the cars upon the intermediate side or switch tracks, so as to obstruct the view of the deceased, as she approached from the east, the track on which the train from the south was moving at the time.

As to the conduct of Mrs. Butts, at the time of the injury, which is the controlling question in this behalf, the evidence shows we think in substance about this state of facts : She was about sixty-five years old at the time, as her husband, the plaintiff, states, and was passing over the crossing going west, that is, she was

going over the crossing, from the east to the west side of the railroad tracks, whilst, as we have before seen, the train detached from the engine, was moving from the south to the north on what is designated in the evidence, as the "scale track," or the second track from the west. She had on a bonnet, it seems the ordinary sun-bonnet, which covered her head and ears, and extended forward somewhat, over her face, and was carrying a basket in her left hand or on her left arm. As she passed over the third track, from the west, her face was turned to the north, in which direction she continued to look until she passed over the distance between the third and second track, which is given at seven and a half feet and some inches, and she so continued to look to the north until she stepped upon the second track, when, as the petition charges, and the evidence shows, she was immediately struck by the said train, so coming from the south.

Her attention, at the time, seems to have been wholly directed to, and occupied with, an engine, which at the time was moving, or backing, down to the north of said crossing, but, we have been unable to learn definitely from the evidence, which of these tracks said engine was on, at the time. The evidence shows that she did not look or turn her head to the south, in which direction the train was coming, and did not notice or observe the same. This is the statement in substance, in this behalf of Mr. Shafer, who was the principal witness for plaintiff, and who saw and observed Mrs. Butts as she approached, and entered upon the said track, where she was struck. Shafer, who was opposite the crossing and on the west side, and who was able, in his position, to see the train (the first or the main track to the west only, being between him and the moving train) became alarmed, and remarked, as he testified on his examination in chief, " 'that lady will

be catched sure, now she is looking up there, all the time watching that engine,' and sure enough she walked right across, and the front end of the train struck her." Similar statements are made by him, perhaps, even more fully and clearly, upon cross-examination, in which, in reference to direct questions, in that behalf, he says that she "kept looking northward all the time, until the train struck her," and that "she was walking right to the approaching train,—it seemed like she did not notice it." And again, he says "it seemed to me, it is a wonder why she don't look around."

It also further appears, from the examination in chief, as well as cross-examination, that after he and others got over to where she was, and whilst they were lifting her up, she "wanted to know who struck her," but this exclamation or inquiry, so made, is perhaps of little value under the circumstances. The evidence further shows, as claimed by plaintiff, that cars, on the intermediate tracks extended up to or about up to the crossing on the south, and that they pretty effectually obstructed the view of a party, walking over said crossing, and approaching the second track from the east, but the evidence is, we think, direct, clear and indisputable, that, after passing over the third track from the west, there was before entering upon the second track, an open space being the width between the tracks (less, perhaps, the extension of the car over the track), in which the deceased would have an unobstructed view of the approaching train from the south.

Dr. Suddrick having, in the first instance, testified as to the injury and cause of death, upon being recalled by plaintiff to testify as to the condition of the tracks, as to cars, etc., upon cross-examination testifies, among other things, as follows:

"Q. You say, then, if Mrs. Butts, just as she was going from the third track over towards the scale track,

on which the train was running, had turned her head just as she passed the box cars on that third track and looked down she could have seen the train? A. Most assuredly; if she had looked down that way she would have seen the train coming.

"Q. And avoid being struck by that train? A. Yes, sir; but it was only two steps, you may say; two short steps.

"Q. And if she had looked down she could have seen that train and avoided being struck? Your answer to that is yes? A. Yes, sir; of course that is the case; any one could not help but answer it that way."

Mr. Shafer's testimony is, as to this, substantially to the same effect, as we understand the same. For example, the following, among other things, occurs in the course of his examination:

"Q. There was nothing to prevent her from seeing it, if she had looked down that way? A. Well, she was coming from the east, this way (indicating), and here were some trains, then some standing box cars standing there, and so on, and the noise of the other engine, they both attracted her attention. It seemed to me, 'it is a wonder she don't look around.'

"Q. She didn't look around? A. No, sir.

"Q. There was nothing to prevent her from seeing the train if she had looked around? A. If she had looked around she might have seen it.

"Q. Was there anything to prevent her? A. It was a very short time for her to see it, too; it was moving up pretty rapidly.

"Q. Was there anything to prevent her from seeing the train if she had looked around. A. No, sir; not as I know of; if she had looked, walked up within a track or so, within the width of one track.

"Q. She could have looked down and seen the train coming up? A. Yes, sir

"Q. · And if she had seen it coming up she could have readily stopped, and not gone upon the track? A. I think so."

Our attention is further directed to some other statements, in the evidence of this witness, supposed to be somewhat different, or to modify the force and effect of the evidence as above cited, but this evidence seems to be given in answer to questions, as to the opportunity and ability of Mrs. Butts to see the approaching train, as she approached, and when at or upon the third track, with reference to which position, he says he don't know whether she could see, or that he don't think she could. But we think he means to say, and does say, that after crossing the third track, she could have stopped in safety, in the space between these tracks, and by looking south, could have seen the train in time to avoid injury. This is, we think, manifestly the fact from the necessary open space between said tracks.

And further, we may observe, that the petition does not charge, that the employes and servants of defendant could have prevented the injury, after Mrs. Butts entered upon said track, but alleges, as before stated, that she was struck just as she was in the act of stopping upon the same. The entry of Mrs. Butts upon the railroad track, and the collision were simultaneous. The evidence of Mr. Shafer further is, that the conductor, who was about the middle of the train, did not see Mrs. Butts in time, but saw her when she was getting on the track, or just as she was hit, and seemed much alarmed and ran over the train, setting the brakes pretty fast. Such, then, being in effect and substance the evidence in plaintiff's own behalf, it shows, we think, the existence of contributory negligence on the part of the deceased, which, notwithstanding the negligence of defendant in the said operation and management of said train, precludes a recovery on the part of the plaintiff. The case, so made, is governed and controlled, we

think, by the decisions in the case of *Yancey v. Railroad*, 93 Mo. 433, and cases therein cited. Under those views and authorities, and upon the petition and evidence in the cause, the instruction, in the nature of a demurrer to the evidence, we think, should have been given, and we so hold.

The judgment is, therefore, with the concurrence of SHERWOOD and BLACK, JJ., reversed; BRACE, J., absent and BARCLAY, J., dissents.