F. RICHARD DRAKE, Respondent, v. THE CHICAGO & ALTON RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, December 5, 1892.

1. Railroads: APPROACHING CROSSING: NEGLIGENCE AND CONTRIBUTORY NEGLIGENCE. The fact that the servants of defendant in charge of its train were negligent in not giving signals on approaching a public road crossing will not warrant a recovery where the injured person was guilty of contributory negligence in not looking out for the train as he came upon defendant's right of way and track.

2. ———: ———: DEMURRER TO EVIDENCE. The evidence in this case is reviewed, and it is *held* that a demurrer to the entire evidence should have been sustained.

*Appeal from the LaFayette Circuit Court.*—HON. RICHARD FIELD, Judge.

REVERSED.

THE defendant has appealed from a judgment in plaintiff's favor on account of alleged injuries received by him at a public road crossing near Odessa, Missouri, June 3, 1890. Since the main question is, whether or not the trial court erred in declining to sustain a demurrer to the evidence, we proceed to detail as briefly as we can the facts as they are shown by the record.

The plaintiff lived on a farm about five miles southwest of Odesssa, in LaFayette county. He had lived in the neighborhood about seven years, and on this particular farm about nine months before the third day of June, the date on which he was hurt. From October, 1889, up until the farming season opened in the spring of 1890, he was engaged in hauling wood from the farm which he occupied to Odessa. In going to Odessa with the wood, and in returning to his home, he always passed over the defendant's railroad at the public crossing in question. He says he was, and he must have been, "perfectly familiar with the crossing, and all its surroundings" at the time of, and long before, the day he received his injuries.

The railroad crossing in question is about one and a half miles west of Odessa, on the Odessa and Bates City road. The public road runs due east and west, and the railroad crosses it in a general southeasterly and northwesterly · direction, at an angle of about twenty degrees. The railroad right of way is one hundred feet wide, and the track is laid in the center of it. If the public road and the railroad crossed each other at right angles, a team upon the highway would travel fifty feet within the right-of-way lines before reaching the center of the railroad track, but the public road and railroad in this case cross each other at such an angle, and are so located and used, that a person upon the highway, coming from Odessa and going west, must travel one hundred and seventy-eight feet

within the right-of-way lines before reaching the center of the railroad track. It stands proved by actual observation and actual measurements beyond controversy and beyond doubt, that a person approaching this crossing on the highway would, at any time whilst within the right-of-way lines and at any point on the said one hundred and seventy-eight feet, have a free and unobstructed view of an approaching train for more than a quarter of a mile east of the crossing.

On June 3, 1890, the plaintiff hauled two loads of wood to Odessa, he having charge of one wagon and his son, Daniel, the other. In the afternoon, presumably near six o'clock, after having delivered his wood to the Odessa mill, he and his boy took up their journey homeward. The plaintiff with his wagon led the way, and the boy with the other immediately followed. The team which drew plaintiff's wagon was composed of a blind horse and a crippled mule, which, in addition to lacking the elements of speed, were, on this occasion, "a tired team." The plaintiff approached the crossing in broad daylight at a speed of about two miles per hour, and the train at a speed of about thirty miles per hour. They reached the crossing about the same time, not so near as to collide, but so near that the train passed the crossing after the plaintiff had gone over it and before his son had reached it.

The plaintiff jumped from his wagon, sprained his ankle and fractured a bone of his leg a few inches above the ankle. He says he jumped from his wagon whilst it was on the crossing, and to save himself from impending danger. Other witnesses say they saw him pass over the crossing without leaving his wagon, and that he apparently left his wagon to look after his boy who was following with a fractious horse. Anyhow there is no question but that in jumping from the wagon plaintiff was injured, and for these injuries he

sued the defendant, alleging as his ground of action the wrong and negligence of defendant in failing to give the statutory signals in approaching the road crossing.

In addition to the general denial, defendant set up in its answer contributory negligence on plaintiff's part in that he carelessly approached the crossing without looking out for passing trains. Further facts will be noted in the opinion.

*Trimble & Braley*, for appellant.

(1) The uncontradicted evidence clearly showed that the time of the accident was in broad daylight, the plaintiff had the fullest possible opportunity for seeing the approaching train for at least a quarter of a mile before it had reached the crossing if he had but so much as turned his eyes in that direction, and this too whilst he was traversing any part of the last one hundred and fifty feet of his journey towards the crossing. These facts made it his duty to know that the train was approaching. And his failure to look, see the train and stop before driving upon the crossing constitutes such negligence on his part as prevents a recovery for his injuries as a matter of law, and the jury should have been so instructed. *Fletcher v. Railroad*, 64 Mo. 484; *Harlan v. Railroad*, 64 Mo. 480; *Heinze v. Railroad*, 71 Mo. 636; *Purl v. Railroad*, 72 Mo. 168; *Turner v. Railroad*, 74 Mo. 602; *Kelly v. Railroad*, 88 Mo. 584; *Dlauhi v. Railroad*, 105 Mo. 645; *Powell v. Railroad*, 76 Mo. 80–84. (2) "The law exacted of plaintiff on approaching this crossing that he should, at the nearest and most eligible point on the road, * * * look out for any approaching train." *Moberly v. Railroad*, 17 Mo. App. 518–543.

*Wallace & Chiles* and *N. M. Houx*, for respondent.

(1) The respondent cites the following authorities on the question of contributory negligence, and negligence as a matter of fact for the jury, and demurrer. *Kennayde v. Railroad*, 45 Mo. 225; *Owen v. Railroad*, 58 Mo. 386; *Huckshold v. Railroad*, 90 Mo. 548; *Donohue v. Railroad*, 91 Mo. 357, and cases cited; *Frick v. Railroad*, 75 Mo. 595, 601; *Buesching v. Gaslight Co.*, 73 Mo. 219–231; *Johnson v. Railroad*, 77 Mo. 546; *Kelly v. Railroad*, 95 Mo. 279, 284; *Petty v. Railroad*, 88 Mo. 306; *Tetherow v. Railroad*, 98 Mo. 74; *Stepp v. Railroad*, 85 Mo. 229, 234–5; *Igo v. Railroad*, 38 Mo. App. 377, 381–2; *Hilz v. Railroad*, 101 Mo. 36, and cases cited; *Moberly v. Railroad*, 17 Mo. App. 518; *Kleiber v. Railroad*, 107 Mo. 240, 250–1; *Seegrist v. Arnot*, 86 Mo. 200; *Adams v. Railroad*, 74 Mo. 554; *Rhine v. Railroad*, 100 Mo. 228, 234–5; *Noeninger v. Vogt*, 88 Mo. 592–3; *King v. Railroad*, 98 Mo. 235, 238–9.

GILL, J.—From the facts of this case about which there can be no dispute, the plaintiff cannot, under the oft-repeated decisions in this state, be permitted to recover. It may be conceded, notwithstanding the great amount of evidence to the contrary, that defendant's servants in operating the train failed to observe the law, and did not ring the bell or sound the whistle as the train approached the crossing, and, therefore, were guilty of negligence, yet it clearly appears that plaintiff himself was obviously at fault, in that he failed to look out for approaching trains when about to enter upon defendant's tracks, and which if he had done he would have seen the approaching train in ample time to have avoided the injuries of which he now complains. As said by the supreme court in the

*Lenix case*, 76 Mo. 91, the duty of one who goes upon a railroad track at a public road crossing has been so often defined that its repetition has become monotonous. ''He must use his eyes and his ears; he must look and listen; and, if he fails to observe these most obvious dictates of prudence when approaching such dangerous machinery as a moving railroad train, he has no room for just complaint if he suffers injury solely because of his neglect to use such reasonable and prudent precautions, although the railway company has been remiss in its duty in respect to giving the customary signals.'' "And it is the duty of the court," says the same judge, "when the facts constituting direct contributory negligence are undisputed, to declare to the jury the inference which the law draws from the facts, which inference bars the plaintiff of any recovery."

That plaintiff heedlessly entered upon the open right of way of the defendant's road, and carelessly drove his team up and onto the tracks, and passed over a space of not less than one hundred feet, without looking to the east for approaching trains, is, under this testimony, subject to the demonstration of a mathematical certainty. And it is equally as true, that if he had, while passing over this space, cast his eyes to the east (whence he had reason to believe a train might be approaching) he would have discovered the coming train in abundant time to have escaped all possible danger. The evidence shows unquestionably, and beyond dispute, that when plaintiff entered upon defendant's right of way he was then about one hundred and seventy-five feet from the track of the railroad; it shows, too, that from this time on until the tracks were crossed the plaintiff had an unobstructed view of the railroad east to the distance of fifteen hundred to nineteen hundred feet. He testified that he was then driving at the slow rate of two to two and

one-half miles per hour, and it is admitted that the train was not running to exceed thirty miles per hour. So then when the locomotive and cars were down east of the crossing fifteen hundred feet plaintiff was moving slowly on the country road and towards the crossing at the distance of one hundred to one hundred and twenty-five feet therefrom. If then he had looked east at any time while passing over this one hundred to one hundred and twenty-five feet he could have easily seen the danger into which he was so slowly and so listlessly moving. True it is, that he says that at a point some five hundred feet east of the right of way he stopped, looked and listened and saw no train coming; and further on testifies that he looked and listened when about entering upon the right of way one hundred and fifty to one hundred and seventy-five feet probably from the crossing. But this was not enough. If he had given the matter any thought or attention the plaintiff must have known that at the speed he was traveling a train might after that come in sight and overtake him at the crossing. It was under the circumstances manifestly his duty, acting as a prudent and ordinarily cautious man would, to look out for trains just before placing himself in a position of danger. Whilst passing over that one hundred or one hundred and twenty-five feet he had to the east a most eligible point of observation; and if he neglected this opportunity, and carelessly and thoughtlessly put himself into a place of danger, he was clearly guilty of such contributory negligence as precludes a recovery in this action. The court below should have sustained a demurrer to the entire evidence and directed a verdict for the defendant.

Judgment reversed. All concur.