## MICHAEL MOORE, Appellant, v. ST. LOUIS TRANSIT COMPANY, Respondent.

### St. Louis Court of Appeals, August 4, 1902.

1. **Demurrer to the Evidence: INFERENCE: PRACTICE, TRIAL.** Where a trial court grants a demurrer to the plaintiff's evidence, every fact which the evidence tends to prove, though but in the slightest degree, must be taken as admitted by the demurrer, and every inference which the evidence tends to show in plaintiff's favor should be drawn.

2. **Negligence: PEDESTRIAN MUST "LOOK AND LISTEN": CONTRIBUTORY NEGLIGENCE.** A pedestrian who is about to cross a street railway crossing where there are no gates, flags, guards or signals of warning, is guilty of negligence if, according to his opportunity, he fails to look and listen both ways for a car before attempting to cross the track; but this rule should be reasonably ap-

plied and exception made to it when reason and common experience would make its application impracticable or harsh and unjust to the pedestrian in the streets of a populous city.

3. ———: ———: ———. In the case at bar, the time between cars on the same track, while not always uniform, was well known to be from three to twenty minutes. The plaintiff was familiar with the streets and with the running of the cars. He stated he did not expect a car so soon from the north (neither would any other person in his situation and with his experience) and that he looked to either side of the street and south down the east track for a car on that track: *Held*, this was such care as an ordinarily prudent man would have exercised in like circumstances, and that plaintiff was not guilty of contributory negligence.

4. ———: ———: ———: PROXIMATE CAUSE OF NEGLIGENCE. But in the case at bar, considering that the plaintiff was guilty of negligence *per se*, in failing to look to the north for an approaching car, the fact remains that if there was time and opportunity for the motorman to have stopped or so reduced the speed of his car as to have avoided the injury after the peril of the plaintiff was discerned, or could have been discerned by the motorman by the exercise of ordinary care, the law is that though the plaintiff was guilty of negligence, his negligence was not the direct cause of the injury, but that the negligence of the motorman in failing to stop the car and prevent the injury, was the sole and proximate cause of the injury.

5. ———: ———: ———. Where there is a mere passive fault or negligence on the part of the plaintiff, the defendant is bound to the observance of ordinary care and prudence in order to avoid the wrong.

6. ———: ———: ———: INFERENCE: EVIDENCE. In the case at bar, it is a reasonable inference that, had the car been running at a speed of eight miles per hour, the plaintiff would have had ample time to pass over the west track in safety. The ordinance regulating the speed of cars in the city is a police regulation for the protection of the public, and is as binding on the defendant as if the regulation had been made by a State enactment, and all persons traveling in the street have a right to expect that defendant would observe the ordinance and govern the situation accordingly.

7. ———: ———: ———: ORDINANCE REGULATING SPEED OF CARS. An ordinance regulating the speed of street cars has a direct bearing on the question of defendant's negligence in striking a pedestrian, and should be taken into consideration in determining

whether or not its negligence in running its cars at an unlawful rate of speed was the proximate cause of the injury.

8. ———: ———: ———: ———. In the case at bar, the evidence is clear and uncontradicted that defendant at the time it struck plaintiff was running its cars at not only an unlawful rate of speed, but at a speed that was reckless and extremely hazardous to persons traveling in the streets.

9. ———: ———: ———: BREACH OF DUTY. And if this breach of duty and reckless conduct in running its cars can be reasonably connected with the accident, the case should have gone to the jury.

10. ———: ———: ———: INFERENCE. In the case at bar, the conceded facts justify the inference that if there was a failure to discover plaintiff's danger and to stop the car in time to avert the injury, such failure was owing to the recklessness of the defendant's servants in the management of the car.

Appeal from St. Louis City Circuit Court.—*Hon. Warwick Hough,* Judge.

REVERSED AND REMANDED, AND CERTIFIED TO THE SUPREME COURT.

STATEMENT OF THE CASE.

The suit is for personal injuries alleged to have been inflicted on plaintiff by being struck by one of the defendant's cars on the twenty-sixth day of September, 1900, at Jefferson avenue in the city of St. Louis. At the close of plaintiff's evidence, the court gave an instruction in the nature of a demurrer thereto, whereupon plaintiff took a nonsuit with leave to move to set the same aside and grant a new trial. His motion was duly filed and overruled, whereupon he perfected his appeal.

A summary of the testimony is as follows: Jefferson avenue runs north and south and in it the defendant has a double-track street railway on which its cars are driven by electric power. Thomas street intersects Jefferson avenue and runs east and west.

Plaintiff's residence is on Thomas street, two or three blocks west of Jefferson avenue. Between seven-thirty and eight o'clock on the evening of September 26, 1900, plaintiff left his residence and started to go to a grocery store on the east side of Jefferson avenue and across from Thomas street. Plaintiff walked on the north side of Thomas street to Jefferson avenue, when he looked north and saw a street car coming, traveling south one hundred and fifty feet from Thomas street. He then turned and walked diagonally toward the crossing of Jefferson avenue from the south side of Thomas street, and when he had arrived within a few feet of this crossing the car that he had seen coming from the north passed him. He then turned towards the crossing looking straight ahead and towards the south to see if a wagon or car was approaching the crossing from that direction and not seeing any he stepped on to the crossing and after taking two or three steps and arriving at the middle of the west car track, he heard a motorman hollow out, "Get out of there!" He turned his head, saw the car and made a spring to clear the track but was struck by the car and thrown to the east and severely and permanently injured. The car that struck him was coming from the north following the car that had just passed him and in close proximity to it. There was no headlight on the car, no bell was rung and the car was running at a speed of from eighteen to twenty miles per hour. Plaintiff, after the first car had passed him, did not look north and did not stop, but continued on his course across the street, nor did he listen to hear if another car was approaching. He was about four feet from the track and seven or eight feet from the south crossing when the first car passed him and his back was partially turned toward the north until he arrived at the south crossing. His testimony is that he was not anticipating the approach of a second car from the north and gave his attention

to the east track to look out for cars coming from the south and for wagons that might be upon the east side of the street; that when the first car passed him he made two or three steps forward and then turned in on the crossing; that he did not stop walking from the time he saw the first car approaching until he was struck by the second one; that at that time of the evening if he had looked he could have seen a car approaching from the north at least a hundred feet; that the car by which plaintiff was struck did not slow down until after it had struck plaintiff and ran about one hundred and fifty feet after he was struck before it was stopped.

Mary E. Foster testified that she saw the plaintiff just as he was going to step across the crossing and she saw another car coming over the street and hollowed at the plaintiff but he did not seem to pay any attention; he was looking the other way. The car kept going and when he got about the middle of the track he was struck. It was bright on the crossing on account of the lamplight. It was not a very dark evening.

The evidence shows that the two cars were running about one hundred and twenty feet apart. It further shows that the hardest kind of an electric car to stop, running at eight miles per hour, could be stopped in from seventy to eighty feet. Plaintiff read in the evidence the ordinance of the city of St. Louis which prohibits a greater rate of speed than eight miles per hour to the street railway cars and also ordinance No. 19738, which requires motormen, gripmen, etc., in charge of a car, to keep a vigilant watch for all vehicles and persons on foot on the track, or moving toward it, and on the first appearance of danger to stop the car in the shortest time and space possible.

*J. O. More, T. J. Field* and *Bert Fenn* for appellant.

(1) The court erred in sustaining defendant's demurrer to plaintiff's evidence and refusing to submit the case to the jury. Penney v. Railroad, 71 Mo. Mo. App. 577; Klockenbrink v. Railroad, 81 Mo. App. 351; Chamberlain v. Railroad, 133 Mo. 587; McAndrews v. Railroad, 83 Mo. App. 233. (2) Plaintiff, reasonably near and in full view of the track, looked once and thereby complied with the requirements of the law and the question whether he was negligent in stepping upon the track without looking a second time, and if negligent whether his negligence contributed to the proximate cause of the accident, was a question of fact for the jury to decide, in view of all the facts and circumstances of the case as shown in the evidence, and not for the court. Penney v. Railroad, 71 Mo. App. 577; Russell v. Railroad, 70 Mo. App. 88. (3) The evidence offered by plaintiff was amply sufficient for the jury to find that defendant's motorman did see, or by the exercise of ordinary care could have seen, the plaintiff's perilous position in time to avert the accident, and the case should have been submitted to the jury. Lamb v. Railroad, 147 Mo. 171; Railroad v. Griffith, 159 U. S. 603; Railroad v. Converse, 139 U. S. 469. (4) If plaintiff was negligent, his negligence was prior in time, and remote in cause, while the defendant's negligence was subsequent in time, and proximate in the cause of the accident. (5) Under the well-settled law of this State, plaintiff had made a prima facie case, and was entitled to a verdict, and the case should have been left to the jury. (6) As the question of negligence on the part of the defendant was one of fact for the jury to determine under all the circumstances of the case, and under proper instructions from the court, so also the question of whether there was negligence in the

plaintiff, which was the proximate cause of the injury, was likewise a question of fact for the jury to determine, under like rule.

Boyle, Priest & Lehmann and Lon O. Hocker for respondent.

(1) The plaintiff's own evidence made out a clear case of contributory negligence, and the instruction offered by defendant was properly given. (2) The plaintiff had no right to assume, in view of the very common occurrence of cars being operated in close proximity, especially in the case of a blockade, by fire or otherwise, that two cars would not be operated close together, and it was his duty to look after the first car had passed him. If he had taken that precaution his injury would not have been sustained. His failure to take that precaution was the proximate cause of his injury. Drake v. Railroad, 51 Mo. App. 562. (3) The evidence introduced did not warrant the finding that the motorman could have stopped after the plaintiff became placed in a position of peril, because, according to his own statement and of all the witnesses, the car was right on him the moment he got on the track. The motorman was warranted in assuming that the plaintiff would not place himself in a position of peril without looking or listening. Boyd v. Railroad, 105 Mo. 371. (4) Under the law of this State for many years, it is the duty of persons when approaching street cars, as well as steam railroad tracks, to look and to listen for approaching cars at points advantageous for them to see or hear them, and to protect themselves against injury. Sharpe v. Railroad, 61 S. W. 829; Hook v. Railroad, 63 S. W. 360; Tanner v. Railroad, 61 S. W. 826. (5) It will not do to say that, inasmuch as the plaintiff looked once, he was exonerated from looking again. After looking the first time he saw a source of danger ap-

proaching, which his looking enabled him to avoid.
After that danger had passed, it became his duty to
again look in order to ascertain whether or not another
danger was approaching, which his looking might have
enabled him to avoid. His failing to do this was the
cause of his injury. Duncan v. Railroad, 46 Mo. App.
198; Henze v. Railroad, 71 Mo. 636; Davies v. Railroad,
159 Mo. 1; Jones v. Barnard, 63 Mo. App. 501; Maxey
v. Railroad, 113 Mo. 1; Butts v. Railroad, 98 Mo. 272;
Drake v. Railroad, 51 Mo. App. 562. This duty is
continuous until the dangerous locality is passed. Kel-
sey v. Railroad, 129 Mo. 362; Jones v. Barnard, 63 Mo.
App. 501; Moberly v. Railroad, 98 Mo. 183; Drake v.
Railroad, 51 Mo. App. 562.

BLAND, P. J.—Was the plaintiff guilty of con-
tributory negligence and if so was such negligence the
direct cause of the injury, or was there sufficient evi-
dence to have warranted the court to have sent the case
to the jury to determine whether the injury was due to
the fault of the plaintiff or to the fault of the defend-
ant, are the questions presented for decision by the
record in the case. The trial court having granted a
demurrer to the plaintiff's evidence, every fact which
the evidence tends to prove, though but in the slightest
degree, must be taken as admitted by the demurrer.
Bender v. St. L. & S. F. Ry. Co., 137 Mo. 240; Franke
v. The City of St. Louis, 110 Mo. 516; Noeninger v.
Vogt, 88 Mo. 589; Herboth v. Gaal, 47 Mo. App. 255;
Wilkerson v. Consolidated Street Ry. Co., 26 Mo. App.
144. And every inference which the evidence tends to
show in plaintiff's favor should be drawn. Patton v.
Bragg, 113 Mo. 595; Franke v. The City of St. Louis,
supra; Field v. The Mo. Pac. Ry. Co., 46 Mo. App. 449.
    The evidence of plaintiff is that he did not look or
listen for a car coming from the north just before step-
ping on the crossing; that had he looked he could have

seen the car at least one hundred feet away; that he did not expect a car from that direction, one having just passed, and that he looked out for a car coming from the south on the east track, when he was struck by one coming from the north on the west track.

There are some acts (such as the non-observance of statutes and ordinances designed for the protection of the public, and such reckless conduct as manifests a wanton disregard for the safety and property of others), and some omissions of duty that are so palpably negligent that the courts uniformly pronounce them to be negligence *per se* and from these pronouncements, rules of conduct have been formulated, one of which is that a pedestrian, who is about to cross a street railway crossing where there are no gates, flags, guards or signals of warning, is guilty of negligence if, according to his opportunity, he fails to look and listen both ways for a car before attempting to cross the track. Cooksey v. The K. C., St. J. & C. B. R. R. Co., 74 Mo. 477; Bindbeutal v. Street Ry. Co., 43 Mo. App. 463; Hickman v. The Union Depot Ry. Co., 47 Mo. App. 65; Smith v. The Citizens Ry. Co., 52 Mo. App. 36; Sonnenfeld Millinery Co. v. People's Ry. Co., 59 Mo. App. 668. This rule should be reasonably applied and exceptions made to it when reason and common experience would make its application impracticable or harsh and unjust to the pedestrians in the streets of a populous city.

There are times in these cities when, on account of the crowded condition of the streets, to apply the rule in all of its strictness would effectually block the street crossings or expose the pedestrians to unavoidable hazards. In applying the rule it seems to us that some regard should also be had to the usual order, time and manner of the passing of cars one after another on the same track and to the situation and environment of the plaintiff, and if injury is inflicted by a car to the plaintiff while in a position that a reason-

Moore v. St. Louis Transit Co.

ably prudent man would have taken in like circum-
stances he ought not to be denied a recovery on ac-
count of his mere failure to look in the direction from
which the car came, when to have looked would have
been to have exercised more than ordinary care by
one in his situation. In such circumstances the ques-
tion of his contributory negligence should be for the
jury.

It seems to us that the evidence in the case at bar
presents a situation where the rule should yield some-
what to the circumstances. The time between cars
on the same track, while not always uniform, is well
known to be from three to twenty minutes. The
plaintiff was familiar with the streets and with the
running of the cars. He stated he did not expect a car
so soon from the north (neither would any other per-
son in his situation and with his experience), and that
he looked to the other side of the street and south down
the east track for a car on that track. This was a
reasonable expectation and one that would have been
realized had the cars on both tracks been running on
schedule time. If this was such care as an ordinarily
prudent man would have exercised in like circum-
stances, then the plaintiff was not guilty of contribu-
tory negligence. Cincinnati Street Ry. Co. v. Snell,
32 L. R. A. 276 (s. c., 54 Ohio St. 197); Consolidated
Traction Co. v. Scott, 33 L. R. A. 122 (N. J. Err. and
App.); Evansville Street Ry. Co. v. Gentry, Adm'r,
37 L. R. A. 378; Johnson v. St. Paul Street Ry. Co.
36 L. R. A. 586 (s. c., 67 Minn. 266). But conceding,
as the decisions of our appellate courts seem to indi-
cate, that the plaintiff was guilty of negligence *per se,*
in failing to look to the north for an approaching car,
the fact remains that if there was time and opportu-
nity for the motorman to have stopped or so reduced
the speed of his car as to have avoided the injury after
the peril of the plaintiff was discovered, or could have
been discovered by the motorman by the exercise of

ordinary care, the law is that though the plaintiff was guilty of negligence, his negligence was not the direct cause of the injury, but that the negligence of the motorman in failing to stop the car and prevent the injury was the sole proximate cause of the injury. Shearman & Redfield on Negligence, (5 Ed.), sec. 99; Chamberlain v. Pullman Palace Car Co., 55 Mo. App. 474; Isabel v. Han. & St. J. R. R. Co., 60 Mo. 475; Rine v. The Chicago & Alton R. R. Co., 88 Mo. 392; Reardon v. The Mo. Pac. Ry. Co., 114 Mo. 384; Baird v. Citizens Ry. Co., 146 Mo. 265; Cooney v. So. Electric Ry. Co., 80 Mo. App. 226; Klockenbrink v. St. L. & M. Riv. Co., 81 Mo. App. 356 and cases cited; McAndrew v. St. Louis & Sub. Ry. Co., 88 Mo. App. 97; Roberts v. Spokane Street Ry. Co., 54 L. R. A. 184.

Judge Scott expressed the rule, in Adams v. Wiggins Ferry Co., 27 Mo. l. c. 101, as follows: "Where there is a mere passive fault or negligence on the part of the plaintiff, the defendant is bound to the observance of ordinary care and prudence in order to avoid doing him a wrong." And in Tuff v. Borman, 5 Com. B. N. S. 573, the rule is expressed as follows: "Mere negligence or want of ordinary care will not disentitle a plaintiff to recovery unless it is such that but for it the misfortune could not have happened, nor if the defendant might, by the exercise of care on its part, have avoided the consequence of the negligence and carelessness of the plaintiff." To the same effect in Virginia Midland Ry. Co. v. White, 84 Va. 498.

The evidence is that plaintiff was in the glare of the street lamp and could have been seen by the motorman had he looked, and the fair inference to be drawn from the evidence is that the car was at least one hundred feet from the crossing when the plaintiff was about to step on the track and that the car could have been stopped in seventy feet had it been running at a lawful speed. Without any warning by ringing the bell, without an effort to stop or check his car, while

plaintiff's back was turned toward the north, the motorman ran his car onto him. This was evidence of culpable negligence that should have been submitted to the jury.

II. It is a reasonable inference, also, that had the car been running at a speed of eight miles per hour, the plaintiff would have had ample time to pass over the west track in safety. The ordinance regulating the speed of cars in the city is a police regulation for the protection of the public, and is as binding on the defendant as if the regulation had been made by a state enactment, and all persons traveling in the street had a right to expect that defendant would observe the ordinance and to govern their situation accordingly. The ordinance had a direct bearing on the question of defendant's negligence and should be taken into consideration in determining whether or not its negligence in running its cars at an unlawful rate of speed, was the proximate cause of the injury. Wright v. Malden & Melrose R. R. Co., 4 Allen 283; Correll v. The B. C. R. & M. R. R. Co., 38 Iowa 120.

Plaintiff was lawfully in the street. The evidence is clear and uncontradicted that defendant was running its cars at not only an unlawful speed, but at a speed that was reckless and extremely hazardous to persons traveling in the streets. Evansville Street Ry. Co. v. Gentry, Adm'r, 37 L. R. A. 378. If this breach of duty and reckless conduct can be reasonably connected with the accident, the case should have gone to the jury. Williams v. The Great Western Ry. Co., L. R. 9 Exch. 157. In Correll v. B. C. R. & M. R. R. Co., supra, at page 123, it is said by Chief Justice MILLER, "that if the injury would not have occurred except for a violation of the ordinance, the defendant is liable." See also 1 Shearman & Redfield on Negligence, section 27. In Langhoff, Adm'r, v. Railway Co., 19 Wis. l. c. 497, the court, through Dixon, Chief Justice, said: "Certainly, some consideration is to

be given to the circumstance that the defendant was prohibited by law from running its train at a rate of speed not exceeding six miles an hour, and that if the trains had been running at that rate or less the deceased would have had ample time to pass the track unharmed and without the risk of harm.''

In Hutchinson v. Mo. Pac. Ry. Co., 161 Mo. 246, it is said: ''But the city ordinance forbade the running of the train at a higher rate than six miles an hour, and this train was running at the rate of thirty-five miles an hour. That act was negligent *per se,* and if it was the cause of the accident, then defendant was liable unless the deceased contributed to the result by her own negligence.'' And it was held that the fact that the deceased saw the train approaching and undertook to cross the track in front of it (misjudging the speed at which it was running) was not conclusive that she was guilty of contributory negligence.

From the opinion in Hilz v. Mo. Pac. Ry. Co., 101 Mo. 36, l. c. 53 and 54, we take the following extract:

''Parties operating such engines must do so, we apprehend, upon the theory that collisions and accidents are liable to happen at public crossings in general use in cities like St. Louis. And they ought to be vigilant and ready to avoid impending dangers, if they can reasonably do so. This increased care the law exacts out of tenderness for human life, which is more largely or frequently exposed at such places than at other localities. If, then, the law charges those in control of such dangerous agencies with the duty of active vigilance at such places, then the fact that they did not see the person injured will not, in such cases, necessarily exonerate the corporation from liability. If such failure to so discover him was the result of the omission of that measure of duty which the law requires, in view of the locality, circumstances and dangers to be anticipated, and the due observance thereof would have enabled the persons in control of danger-

ous agencies of this sort to have avoided the injury by the use of reasonable care, then and in such case, such omission and want of reasonable care is, under the law, held the proximate cause of the injury, and liability for the resulting damage may then exist, notwithstanding the negligence of the person injured.''

In Hanlon v. Mo. Pac. Ry. Co., 104 Mo. 381, it was held that the failure to ring a bell on a moving railroad engine, as required by a city ordinance, alone constituted such negligence as will warrant a recovery where it appears that obedience to the requirement of the ordinance would have prevented the injury sued for. In Sullivan v. Mo. Pac. Ry. Co., 117 Mo. 214, the deceased while attempting to pass over a public railroad crossing in Kansas City was run over and killed by a train of cars running at a speed prohibited by ordinance. The trial court gave the following instruction:

''5. Although you may believe from the evidence that Ellen Sullivan was guilty of negligence in stepping upon the track, yet if you further find from the evidence that after said Ellen Sullivan was guilty of negligence, the agents, servants and employees of defendant in charge of the locomotive and cars discovered or could have discovered by the use of ordinary care, her condition, and the danger of the same, if it was dangerous, and could have avoided injuring her by the use of ordinary care, and failed to do so, then such negligence of said Ellen Sullivan is no defense to this action [and in this regard the court further instructs you that although you believe from the evidence that Ellen Sullivan was guilty of negligence in stepping upon the track, and although you may believe from the evidence that the servants, agents and employees of defendant in charge of said train, after seeing her on the track, and discovering the danger of her position, if it was dangerous, could not have avoided injuring her by the use of ordinary care, yet

if you further find and believe from the evidence that their inability to avoid such injury after discovering her condition, was caused by their running at an illegal rate of speed, and if they had then and there been running at a legal rate of speed they could have avoided injuring her, by the use of ordinary care, then such negligence of said Ellen Sullivan is no defense to this action]."

That part of the instruction embraced in brackets was condemned by Brace, in the main opinion which was concurred in by Sherwood and Gantt, JJ. Judge Black, in a separate opinion, held that inability to stop the train in time to avoid the injury was no excuse, if the inability was due to the prohibited rate of speed at which the train was running. Judge Barclay, in a separate opinion, spoke as follows:

"This distinction between different sorts of negligent acts of the defendant seems to be entirely artificial, and untenable on principle. Worse than that, its application has the effect to excuse the defendant from performing one duty (said to rest upon it by reason of common-law principles) because of its failure to observe another duty enjoined on it by the ordinance.

"These ordinances contemplate that persons are likely to be upon the public streets where defendant has its tracks, and their design is to protect the lives, limbs and property of citizens lawfully using the highway, concurrently with the railway company. If a train is moving slowly, that care which its managers are bound to use, to avoid running people down, will be far more effective than if the train is going at a great speed.

"It appears in evidence that if the train had been running at the ordinance rate, it could have been stopped within ten feet; but, in point of fact, it was stopped 'about a block' after passing the place of accident. All the evidence establishes that it was run-

ning at a higher rate of speed than the ordinance permitted.

"To hold that defendant was bound only by the duty to use ordinary care to discover and avert injury to Mrs. Sullivan, however fast the speed of the train might be, is, in my opinion, to take the life out of the ordinance, and to put a premium on its violation.

"Such a ruling practically gives defendant a great advantage from its own wrong and seems to me to be out of harmony with the reason and spirit of the law of negligence."

Judge MACFARLANE, in a separate opinion, said:

"The running an engine within an incorporated town or city at a rate of speed prohibited by a valid ordinance is of itself negligence, and if one is injured on a public crossing, by an engine being run in violation of such ordinance, the corporation is prima facie liable for all damages resulting therefrom."

Judge BURGESS, in his separate opinion, said:

"I concur in the opinion of the court with the exception of what is said therein, in regard to instruction number 5, given on the part of plaintiff, and the instructions given on behalf of defendant, to the effect, that, although defendant was guilty of negligence *per se, in running its train, which caused the accident, at a rate of speed prohibited by city ordinance, yet, if after those in charge of the train exercised reasonable care and diligence to avoid the collision after they saw the perilous position of deceased, the defendant is not liable.*

"But for the ordinance limiting the rate of speed in the city, the rule thus announced in the opinion would be the correct one, but that it is not, with the ordinance in force, is, I contend, well settled law. The rule is well established in this State that moving a train in a city in excess of the rate of speed fixed by ordinance, is negligence *per se.* Schlereth v. Railroad, 96 Mo. 509; Flynn v. Railroad, 78 Mo. 201; Holmes v. Railroad, 69

Mo. 536; Elliot v. Railroad, 67 Mo. 272; Leim v. Railroad, 90 Mo. 314; Eswin v. Railroad, 96 Mo. 290.''

From these four separate opinions it appears that four of the seven judges sitting in banc approved the instruction number five as a whole and held that running at a speed prohibited by a city ordinance was not a valid excuse for not stopping the train and avoiding the injury if it could have been stopped in time had the train been running at a lawful speed. In L. S. & M. S. Ry. Co. v. Bodemer, 139 Ill. 596, the court said: ''The train which committed the injury was traveling at the unusual speed of thirty-five or forty miles an hour, in the crowded city of Chicago over street crossings, upon unguarded tracks so connected with the public street and so apparently the continuation of the public street, as to be regarded by ordinary citizens as located in the public street, along a part of such track where persons were known to be passing and crossing every day; in conceded violation of a city ordinance as to speed, and without warning of the approach of the train by the ringing of the bell. This conduct tended to show such a gross want of care and regard for the rights of others as to justify the presumption of willfulness. It also tended to show that if there was a failure to discover the danger of the deceased such failure was owing to the recklessness of the company's servants in the management of its trains.''

The conceded facts in the case at bar justify the same inference that if there was a failure to discover plaintiff's danger, and to stop the car in time to avert injury, such failure was owing to the recklessness of the defendant's servants in the management of the car. In Guenther v. St. Louis, I. M. & S. Ry. Co., 95 Mo. 286; Bowen v. The C., B. & K. C. Ry. Co., 95 Mo. 268; Merz v. Missouri Pacific Ry. Co., 88 Mo. 672; Frick v. The St. Louis, K. C. & N. Ry. Co., 75 Mo. 595; Bluedorn v. The Mo. Pac. Ry. Co., 108 Mo. 439, the speed and operation of trains in cities were held to be appropriate

evidence to establish negligence on the part of defendants.

From the evidence in the cause we conclude that it can not be said, as a matter of law, that plaintiff's negligence (if any) was the direct cause of the injury; and that there is abundant evidence from which the inference may be logically drawn, that the injury was due to the excessive speed of the car, if so the plaintiff is entitled to recover. Fath v. Railway Co., 105 Mo. 537.

The judgment is reversed and the cause remanded. Judge *Barclay* concurs. Judge *Goode* dissents and thinks the opinion is in conflict with Butts v. St. Louis, I. M. & S. Ry. Co., 98 Mo. 272; Watson v. Mound City Ry. Co., 133 Mo. 246; Kelsay v. Mo. Pac. Ry. Co., 129 Mo. 362; Moberly v. K. C., St. J. & C. B. Ry. Co., 98 Mo. 183; Jones v. Barnard, 63 Mo. App. 501; Drake v. S. & A. Ry. Co., 51 Mo. App. 562, and asks that the cause be certified to the Supreme Court for its decision, which is accordingly done.

### DISSENTING OPINION.

GOODE, J.—In this case the plaintiff had left his home on the north side of Thomas street, west of Jefferson avenue, one evening in September, 1900, to go to a grocery store on or near the southeast corner of said street and avenue. He walked along the north side of Thomas street until he came to the crossing on the west side of Jefferson avenue, then turned south over the crossing, on which he walked until a little north of the center of Thomas street, when he left it and walked diagonally southeastwardly, to the crossing over Jefferson avenue on the south side of Thomas street. As he drew near the latter crossing, he looked north and saw a street car approaching from that direction. This car passed as he stood a short distance away on the crossing last mentioned. As soon as it had passed, he took a few steps, which carried him

into the middle of the west railway track on Jefferson avenue, and heard some one shout "Get out of there," which startled him so that he made a leap, and was immediately struck by a second car coming from the north. Plaintiff admits that after the first car passed, he at once walked on to the west track, without looking north again to see if a car was coming; although he was familiar with the locality, the mode in which the street cars were run and knew that those on the west track came from the north. At no time did he stop walking, as the first car passed without it being necessary for him to stop, and he then continued across the street until he was struck by the second car.

Plaintiff told the story of the accident on his examination in chief as follows:

"Well, I was after washing my feet, and I was in the house and I goes to take hold of me pipe, I wanted to get a smoke, and I had no tobacco, and I run me shoes on without stockings, and I started to go and get me some tobacco, and I took hold of a little pitcher that was there to get me a little pitcher of beer so at the same time I would have a cold drink. I started out, and when I got down to the corner I stepped out off of the sidewalk on the crossing. The car was coming down. I see the car coming down from the alley, as I was passing along. I walked across the street, and that car passed me by, and he was ringing his bell and going as fast as he could go; there is no mistake in that. Well, I was within three, or may be I had three steps to make before I got into the track, and as soon as I got into the track, the fellow hollered "Get out of there! Get out of there," and I looked and I jumped, and that was the last of me; I couldn't tell no more.

"Q. When did you see the car? You said you saw a car? A. I see the car that passed me, I seed this car ahead of it just before it struck me that way (striking his hands together) and no more. Q. Did you see *that* car before it struck you? A. No, sir—

well I seen it just as it was going to strike me, when the fellow was hollering at me, ''Get out of there! Get out of there!'' And I gave a jump, and I jumped high enough to get out of his way, and that is all I know when this happened. Q. When you came to the corner, did you look one way or the other to see whether the car was coming down? A. When I come to the corner and I stepped out in the street, I looked up. Q. Which way did you look? A. *I looked up north,* and *I was looking south,* I was going south to get across the track, and I would see anything that would be coming to me there; but I looked to the north, that way, and the car was coming down from, well from the alley, from this side of the alley, and just as I went across, about four or five feet of the crossing, the car passed, and I was alongside of the car out in the street, there was room enough for me to keep out of the car's way as it was passing, and as soon as I turned to go across on the crossing the fellow hollered ''Get out of there! Get out of there!'' and with that I jumped off the track and I know no more after that.''

On cross-examination he testified:

''Q. You kept walking down towards the south cross-walk of Jefferson avenue? A. Yes, sir. Q. And where were you when the car passed you by? A. I was about in here (indicating on a map). Q. Walking south? A. Yes, sir. Q. To let the car pass you by? A. Yes, sir. Q. You did not have to stop in order to let the car pass you by? A. No, sir; I didn't have to stop. Q. When the car passed you and left the crossing clear how far were you away from the near rail of the track? A. I had two or three steps to make until I got into the middle of that track there, just two or three steps. Q. About six or eight feet, something of that sort? A. No, sir; two steps from me would amount to five feet; that is what I calculate, a step is two feet and a half. Q. Two would be five feet and three would be seven and one-half feet, *so you*

*were from five to seven and one-half feet away?* A. Yes, sir. Q. *When this car passed you by?* A. Yes, sir.......... Q. *And as soon as this car passed you by you started right on across the track?* A. Yes, sir. Q. *And you didn't look any more after you looked in here for a car?* A. No. Q. *And you didn't listen or pay any particular attention any more after this car had passed you by?* A. No, of course not. . . . Q. And you could see up and down the street a good ways couldn't you? A. If it wasn't dark you could see a good ways up there, but the trouble was you couldn't see where there was two cars, one behind another. You couldn't see if there be two following one behind the other. You could see only the one car coming and then I expected no other one behind it. Q. In other words, you did not expect two to be so close together and, therefore, you didn't look? A. Exactly. Q. You could see a block away at that time of night on that day, couldn't you? A. I don't know as I could see a block away at that time of night; I am not sure." . . . Q. You could see a light a long ways? A. Yes. Q. *And you could see an object that was not lighted over a hundred feet away, couldn't you, on that evening?* A. Yes, sir. Q. Now in order to look south to see whether the car comes; and to look north you merely had to turn your head and your neck, just a glance? A. Yes. Q. You don't have to turn your whole body? A. Yes, sir. Q. And you can look in both directions, can't you, in the space of a second? A. Both north and south. I could look both north and south, and I looked north because my back was turned to the north and as I was going across I looked north and I saw the car coming. Q. You looked north when the first passed and before you reached the cross-walk? A. Yes, sir. Q. *But after that car passed you, you did not look north any more; that is what you say?* A. No, sir, I did not not."

Mary Foster, one of plaintiff's witnesses, testified:

"I saw the old man go across and I happened to see the car coming very swift, *but I didn't know he was going to go right in front of it,* but, when he stepped in the track, I hollered, but it didn't seem to do him any good.   Q.   *The car was right on him at that time?* A.   *Yes, sir."*

This witness also swore that in the interval between the passage of the two cars, she walked from No. 2612 Thomas street, passed 2610, 2608, 2606, and was in front of 2604 at the time of the accident.

The cars were running about one hundred and twenty feet apart.

The foregoing evidence shows to my mind very conclusively, that the plaintiff was guilty of such contributory negligence as to justify the circuit court in giving the peremptory instruction to the jury to return a verdict for the defendant.   Granting that the car which struck him was being run at too high a speed, his admission that he was seven or more feet from the west track when the first car passed; that he continued to walk ahead on to said track without again looking north to see if a car was approaching, although he knew cars on that track approached from the north, makes such a case of carlessness on his part as to defeat his action.

After deducing from all the evidence the inference most favorable for the plaintiff, we must still have a case where the negligence of the plaintiff concurred with that of the defendant as the proximate cause of the accident.   No recovery can be had in such instances. Craig v. Sedalia, 63 Mo. 417; Dougherty v. Railroad, 97 Mo. 647.

This controversy is undistinguishable in principle, as far as I am able to see, from numerous others in which the plaintiff was nonsuited because his injury was sustained while he was attempting to cross a railway track without first looking or listening to ascertain if a train or a car was approaching.   Watson v. Mound

City Street Ry. Co., 133 Mo. 246; Boyd v. Wabash Ry. Co., 105 Mo. 371; Butts v. St. Louis & Iron Mt. Ry. Co., 98 Mo. 272; Maxey v. Railroad Co., 113 Mo. 1; Davies v. Railroad Co., 159 Mo. 1; Henze v. Railroad Co., 71 Mo. 636; Vogg v. Railway Co., 138 Mo. 172; Tanner v. Railroad Co., 161 Mo. 497; Hook v. Mo. Pac. Ry. Co., 63 S. W. 360; Jones v. Barnard, 63 Mo. App. 501.

The fact that the defendant was guilty of negligence in running its car at an unlawful speed, will not exonerate the plaintiff from the consequences of his own negligence in stepping on the track without taking the simple precaution of looking for danger where he knew it was apt to be. This has been often decided. Drake v. Railroad Co., 51 Mo. App. 562; Henze v. Railroad, supra.

Running cars more rapidly than an ordinance allows, is, surely, no more flagrant a dereliction than the failure of a steam railway company to give the crossing signals; and it is unquestionable law that this omission on the part of the servants of a railway company, who were running one of its trains, does not render it liable to a plaintiff who is hurt by going on the track without looking or listening for an approaching train, which he could have seen or heard if he had looked or listened.

The plaintiff's testimony in the present case discloses that at no time did he hesitate or pause in his course; that he was seven or eight feet from the west track when the first car passed him, and could easily have turned his head north to see if another car was approaching; that he could have seen the car which hit him if he had looked, whether it had on a headlight or not, one hundred feet away; that he did not take this easy precaution, but went straight onto the track and was immediately struck by the car. I fail to see why such negligence was not the proximate cause of plaintiff's injury—at least as proximate as the lawless speed of the car.

Plaintiff gives three reasons why he did not look to

the north after the first car passed. He says he was looking to the south to see if a car was coming from there; that he looked ahead because that was the way he was going, and that he did not look north again because he was not expecting another car to follow so soon after the first one. But there was no necessity for him to be watching to the southward until after he had seen the other direction was safe, for he knew the cars on the west track would approach from the north. A glance each way would have been sufficient. It was his plain duty to look out for danger on the west track before he endeavored to cross it. Nor was it enough that he had looked one time and seen the first car. The duty of looking continued until the danger was over; that is, until he saw the way was clear for him to cross the nearest track. Haydon v. Railroad, 124 Mo. 566; Kelsay v. Railroad Co., 129 Mo. 362; Moberly v. Railroad Co., 98 Mo. 183; Drake v. Railroad Co., 51 Mo. App. 562; Jones v. Barnard, 63 Mo. App. 501. Instead of doing so, he heedlessly walked right in front of the car which hurt him.

In each of the cases last cited, the plaintiff had taken care to look and listen before going on the track, but had done so only one time, although he might easily have detected the danger thereafter, if he had looked or listened again; and for his omission to do so he was denied a recovery.

In my judgment, the facts in this case make the rule announced in Morgan v. Railroad Co., 159 Mo. 262, and Hutchinson v. Railroad Co., 161 Mo. 246, wholly inapplicable. That rule, commonly known as the "humane doctrine," is that when a plaintiff is injured by the negligence of both himself and the defendant, but the defendant, before the injury, discovered, or by the exercise of ordinary care might have discovered, plaintiff's peril, and afterwards neglected to use the means at hand to prevent injuring him, plain-

tiff's contributory negligence will not, under such circumstances, defeat his case.   This plaintiff was in no danger until he stepped on the track, when he was instantly run down by the car.   The motorneer had no chance to save him after discovering his position of peril, *which is of the essence of the humane, or "last chance" rule.*   Whatever negligence defendant's servants were guilty of in running the car too rapidly, was prior to and simultaneous with plaintiff's negligence in stepping on the track without looking for a car, thus presenting the common case of concurring negligence. But the theory of the rule in question is, that a defendant's negligence in omitting proper measures to avoid injuring a party *after he is discovered to be in danger* to which he carelessly exposed himself, makes the defendant liable notwithstanding the plaintiff's negligence.   Certainly a motorneer or engineer can not be required to assume that an adult person approaching a railway track is going to walk in front of an engine or car, instead of pausing until it passes, or act on such an assumption.   The humane rule is properly invoked in cases where the injured party was on the track and exposed to peril in view of the persons operating the car or train, if they were vigilant, for a period long enough for them to avoid striking him by proper efforts.

Here, the plaintiff, to the surprise of one witness who was watching him, stepped in front of the rapidly approaching car, which he could readily have seen by turning his head, and was immediately struck.   It is plain, therefore, that his own reckless act was the cause of his injury.   No reasonable inference can be drawn that he would have escaped but for a subsequent negligent act or omission of the defendant, or that the negligence of the latter was any more the proximate cause of the accident than was his own.

For the foregoing reasons I am constrained to dissent from the decision of my learned associates in this

cause, and to favor an affirmance of the judgment of the circuit court. I deem the decision of the majority of this court in conflict with the following previous decisions of the Supreme Court, to-wit: Butts v. St. Louis & Iron Mt. Ry. Co., 98 Mo. 272; Watson v. Mound City Street Ry. Co., 133 Mo. 246; Kelsay v. Railroad Co., 129 Mo. 362; and with the following decisions of the Kansas City Court of Appeals: Jones v. Barnard, 63 Mo. App. 501; Drake v. Railroad Co., 51 Mo. App. 562.