Burkholder v. Henderson.

John M. Burkholder *et al.*, Appellants, v. Joseph Henderson, Respondent.

St. Louis Court of Appeals, February 23, 1897.

Sale: RESCISSION: DEED OF RECONVEYANCE: CONSIDERATION: EVIDENCE. Where B. purchased of H. a farm for $4,000, $1,000 in ·cash and remainder in three notes for $1,000 each, secured by deed of trust on the farm, and subsequently H. agreed to take back the farm on such terms that B. should lose nothing, and B. accordingly executed and delivered to H. a deed of reconveyance, for the recited consideration of $4,000, which was shown to be about the reasonable value of the farm at that time, which H. accepted, and gave to H. two notes, for the unpaid interest on the $1,000 notes, secured by deeds of trust on other property, with the understanding, as testified by B., that when H. paid him the balance of $1,000 still due him on the farm, the two interest notes would be paid out of it, and the deeds of trust satisfied, and H. paid $3,000 of the consideration for the reconveyance to him by surrendering to B. the three $1,000 notes, but refused to pay the balance of $1,000,—in a suit by B. for recovery of such balance, and for the reasonable value of the farm, after deducting the amounts paid when it was conveyed to H.,—*Held*, that the recital of the consideration in the deed, accepted by defendant, was *prima facie* evidence of an agreement on his part to pay the sum stated.

*Appeal from the Pike Circuit Court.*—Hon. Reuben F. Roy, Judge.

Reversed and remanded; Judge Bland concurring, Judge Biggs dissenting.

*J. H. Blair & Son* for appellants.

The relations of the parties may be looked into to ascertain what the contract was. 1 Add. Con. 86; *Davis v. Hendrix*, 59 Mo. App. 444.

"An offer to sell a certain thing on certain terms, may be met by the answer, 'I will take that thing on

those terms,' or by answer which means this however expressed." Par. Con. [8 Ed.], foot page 494.

The consideration stated in a deed is *prima facie* the true one. *Hickman v. Hickman*, 55 Mo. App. 303; *Jackson v. R. R.*, 54 *Id.* 636; *Wood v. Broadley*, 76 Mo. 23; *Fontaine v. Boatman's Sav. Inst.*, 57 *Id.* 552.

The deed must be presumed to contain a correct expression of the intentions of the parties. *Cooper v. Deal*, 114 Mo. 527.

*Clark & Dempsey* for respondent.

The consideration expressed in the deed was a mere recital, hence is explainable by parol evidence. *Jackson v. R'y*, 54 Mo. App. 636; *Hollocher v. Hollocher*, 62 Mo. 267; *Landman v. Ingram*, 49 *Id.* 212.

Appellants can not attack the settlement in the manner sought in this case. *Och v. R'y*, 130 Mo. 27–45.

Respondent was entitled to possession when the land was reconveyed to him. *Hickman v. Hickman*, 55 Mo. App. 303.

APPELLANTS' REPLY.

Respondent denied *in toto* everything appellants alleged; and yet his counsel in their brief set up a settlement as a bar to appellants' recovery. If the two counts in appellants' petition are inconsistent, respondent had his remedy. There was no settlement, and if there had been, it should have been pleaded. *Coombs v. Smith*, 78 Mo. 32.

BOND, J.—In 1893 the plaintiff purchased a farm from defendant for $4,000, $1,000 of which was paid in cash and three notes for the like amount, payable in one, two, and three years, and interest at seven per

cent was given for the remainder of the purchase money. In September, 1895, plaintiff executed a deed of reconveyance of said property to defendant for the recited consideration of $4,000. This deed was delivered to defendant, who after three or four days reported to plaintiff that it was all right. While plaintiff owned the farm he gave his notes for the interest on the deferred payments which accrued up to October 20, 1894, and secured the same by a deed of trust on other property. According to plaintiff's testimony he went to see the defendant about one month before the deed of reconveyance was made, when the following took place, to wit:

"*Q.* Where did you see him?" "*A.* At the corner of Brother Wilkes' house, at the fence; he sucked his teeth and says, pshaw, I am sorry to hear it. I says Uncle Joe it is a fact; I says this great panic has come on us, this debt is too heavy; I have strived to pay it, and I says I can not do it; I says I have placed all the confidence in the world in you and told my friends that, and that you wouldn't suffer me to lose anything. He says, John that's right. I won't suffer you to lose a nickel. That's all that was said about the place."

The deed of reconveyance made after this conversation was dated on the thirteenth of September, 1895. On the seventeenth of the same month the parties went to the office of an attorney and had the amount of interest due on the deferred payments computed from October 20, 1894. It seems that this computation embraced the interest which would accrue up to March, 1896. The evidence shows that respondent inquired of plaintiff how he proposed to secure the sum so due as interest; that thereupon plaintiff became unconscious for a while and upon the recovery of the consciousness asked the defendant to wait until Mr. Blair, senior,

could return to the office, the interest calculated having been made by Mr. Blair, junior. Defendant refused to do this, saying the son could go ahead and write a deed of trust to secure said interest, which was found to be $295 and some cents; that defendant also said in that connection to plaintiff as follows: "John I will give you the $50 on that and make the deed of trust for $240" and directed plaintiff to take the deed of trust which had been drawn up on other property and get his wife's signature and bring it back to the office of Messrs. Blair, saying further "I will then go to the recorder's office and acknowledge your deed satisfied and bring you all your papers here, you needn't come to my house, I will bring them to Joe's," (the Messrs. Blair's office). Plaintiff further adds, "that brought a different feeling over me altogether, when he remarked that he would turn over to me all the papers." The evidence shows that plaintiff and his wife executed the deed of trust as thus requested and returned it to the office of Messrs. Blair. What took place then is shown by the following testimony of plaintiff:

"*Q.* What did you do with it?" "*A.* I signed it anyhow, my wife and I, and brought it back here and delivered it to you or your son, I don't know which it was; it was your son, though, I believe, and then called for my notes and deeds of trust; he just handed me out the notes and didn't bring any deeds of trust; I asked him for it; he said there wasn't any here; I says Uncle Joe told me he would take this after I brought it back and go and acknowledge the deeds of trust satisfied and return them to me, my notes and deed of trust; he said no, I was mistaken or somebody was; there was none there for me; I still looked for my deed of trust and found out that was the way he meant it after it was too late."

The evidence further shows that all plaintiff received for the reconveyance of the farm to defendant was the surrender of the three notes for $1,000 each, given for the deferred payments when the farm was originally bought by plaintiff and the remission of $50 of the interest found to be due at the time of the reconveyance.

On cross-examination plaintiff was asked the following questions, and made the following answers:

"*Q.* What did you mean by telling the jury you expected Henderson to release the deed of trust on the Henderson place and the first deed of trust on the Cyrene property and this very identical deed of trust you were making then?" "*A.* I explained that yesterday."

"*Q.* Now please explain it again?" "*A.* When I gave this last deed of trust on the Cyrene property Uncle Joe said for me to take it home and my wife and I to sign it and bring it back to Joe Blair's office; needn't bring it to his house; leave it there and he would take it and go to the recorder's office and acknowledge the deeds of trust all satisfied and bring the deeds of trust to the office and leave them."

"*Q.* If you thought then that Henderson's agreement was to satisfy the deeds of trust on the Henderson place and the first deed of trust on the Cyrene property and the $245 deed of trust on the Cyrene property, what sense was there in executing that last deed of trust at all?" "*A.* I don't understand."

"*Q.* What sense was there in making that last deed of trust if he was going to the recorder's office and acknowledge it satisfied?" "*A.* What sense was there?"

"*Q.* How did you cipher it out then?" "*A.* I thought me assigning this was binding me to all con-

tracts I had been doing before and was making me come to time with the debts I owed.'' Plaintiff admitted that he fully understood the effect of his executing the deed of trust for said interest before he delivered it at the office of Messrs. Blair. There was other testimony tending to show that the value of the farm at the time of reconveyance was about $4,000. The present action is in two counts, the first count is for the balance of $1,000 of the consideration recited in the deed of reconveyance. The second count is for the reasonable value of the farm, after deducting the amounts paid when it was conveyed to defendant. At the conclusion of the testimony the court gave an instruction sustaining a demurrer to the evidence, whereupon plaintiff took an involuntary nonsuit with leave to move to set the same aside, which motion being overruled the plaintiff duly perfected his appeal to this court.

There is really only one question in this case, which is whether the *prima facie* proof of a contract by the defendant, arising from the recital in the deed of reconveyance, to pay $4,000 for the farm

SALE: rescission: reconveyance: consideration: evidence.

was overthrown by the admissions contained in plaintiff's testimony. If these admissions can be logically held to consist with an agreemeent between the parties that $4,000 should be repaid plaintiff when the farm was deeded back to defendant, then the peremptory instruction to find for the defendant was error. Conceding for the argument that the admissions in question afford a strong inference negativing such an agreement, the question remains, is that inference the only one which could have been drawn? Or, might not another inference have been deduced, though of less strength, favoring the existence of such an agreement? If the latter proposition is true, the action of the court in

withdrawing the case from the jury can not be upheld, for the law is well settled that this can only be done when the totality of the evidence excludes any legitimate inference tending to prove the cause of action alleged. The recital of the consideration in the deed accepted by defendant, was *prima facie* evidence of an agreement on his part to pay the sum mentioned. There is nothing in the record showing that before the making of the deed the parties agreed as to what should be its consideration, except that defendant stated to plaintiff that he (plaintiff) "should not lose a nickel." It did appear that plaintiff upon his purchase of the farm had paid the price of $4,000 in cash and notes. Taking this statement and fact together, it was fairly inferable, as recited in the deed of reconveyance, that defendant promised to pay the same sum which he had received for the land. It is true that the natural construction to be applied to plaintiff's conduct in giving a deed of trust on other property at the time of his sale to defendant for the interest on the old debt, leads to the conclusion that plaintiff did not *then* have any claim against defendant exceeding the interest so secured, and we do not hold that a finding by the jury for defendant in accordance with this view would not have been supported by the weight of the testimony. But we can not on the other hand hold that they might not have refused so to find and have returned a verdict in favor of plaintiff on the theory that his action in giving the deed of trust for said interest was done upon a promise made by defendant that he would at once satisfy such deed of trust and return it to the plaintiff. Plaintiff distinctly testified that such a promise was made by defendant, and while it seems a most unusual method of doing business, at the same time it was in the power of the parties to transact it in that way, if they so desired.

It is not necessary to discuss the evidence adduced by plaintiff in reference to the reasonable value of the farm at the time it was conveyed to defendant, for the record shows that plaintiff stated during the trial that he based his right to recover only upon the contract evidenced by his deed to defendant. For the foregoing reasons the judgment in this case must be reversed and the cause remanded. Judge BLAND concurs; Judge BIGGS dissents.

### DISSENTING OPINION.

BIGGS, J.—The plaintiff rests his right of recovery on the declaration of the defendant that he (plaintiff) should not lose anything on account of the purchase of the farm, and that subsequently he accepted a reconveyance of it, wherein $4,000 was mentioned as a consideration. Nothing else is relied on to show an obligation on the part of the defendant to refund the cash payment on the land. The majority opinion states that these two facts made a *prima facie* case for the plaintiff. I deny this. The alleged declaration of defendant that plaintiff "should not lose a nickel" occurred in a casual conversation on the street, and before any terms had been suggested for the reconveyance of the property. This statement under the circumstances ought not to be tortured into an agreement or an expressed intention by the defendant to refund to plaintiff the cash payment on the land. Every subsequent act both of plaintiff and defendant tended to disprove it. The deed of reconveyance was prepared by the plaintiff without any consultation with the defendant. The fact that the latter did not object to the consideration named therein can not be twisted into an undertaking on his part to pay the difference between that sum and the face of the unpaid purchase money notes which he held.

If it be conceded that the alleged statement of defendant and the acceptance by him of the deed furnished some evidence in support of plaintiff's case, such evidence is clearly rebutted by the conduct of the plaintiff at the time the settlement was made. The plaintiff did not testify to any actual agreement as to the terms of the rescission. He merely stated that he understood that he was to get back all of his notes, including the one given for past due interest and the cash payment that he had made. Notwithstanding this he admitted that when the settlement was made and he delivered to the defendant the deed of reconveyance he gave to him an additional note of $240 for the interest then due on the purchase money notes and secured it by a deed of trust on other property. In addition to this, he made the settlement without demanding the cancellation of the other interest note which was held by Henderson. This conduct makes it incredible that there was an agreement that all of the plaintiff's notes should be cancelled, and that defendant should refund to plaintiff the cash payment, or that the plaintiff so understood it. If such was the intention, why did the plaintiff give the additional note? Why did he make the settlement without getting back the other interest note? And finally, why did he deliver the deed of reconveyance without demanding from the defendant the money for which he now sues? The rule of practice in this state is, that if there is substantial evidence in support of a cause of action, the case must go to the jury. If this rule compels the courts of the country to accept absurd and ridiculous theories of the evidence, then the sooner it is modified the better it will be for the proper administration of the law.

There is another phase of the evidence to which I must refer. The plaintiff admitted that in the pur-

chase of the farm he had made a bad bargain; that on account of the hard times and the low prices of farm products he was unable to pay for it. He also admitted that he had the use of the farm for three years and had only paid the taxes thereon for one year of the time. According to his understanding of the terms of the settlement he was to get back all of his notes, also the $1,000 cash that he had paid, pay nothing for the use of the farm, and leave Henderson to pay two years' back taxes. This certainly would have been a magnificent settlement for him. The whole thing is so unreasonable that I have been unable to persuade myself that there is a particle of merit in the plaintiff's claim. This was the view of the trial judge, and in justice to him I have thought it proper to state the grounds of my dissent.