# SANITARY DAIRY COMPANY OF MISSOURI, Respondent, v. ST. LOUIS TRANSIT COMPANY, Appellant.

### St. Louis Court of Appeals, January 20, 1903.

1. **Negligence: STREET RAILWAY: DUTY TO LOOK AND LISTEN.** It is the duty of one driving a wagon across a street over which runs electric cars, in a city, before he attempts to drive across said street to "look and listen" for an approaching car and it is his duty to continue to look and listen for approaching cars until he has passed the railroad track.

2. ————: ————: **ORDINARY CARE: INSTRUCTION: ERROR.** In an action against a street railway company for damages resulting from a collision of a car with a team crossing the track, an instruction in general terms that, if the driver was exercising ordinary care, the verdict should be for the plaintiff without specifically stating the care the driver was bound to exercise, was error.

Appeal from St. Louis City Circuit Court.—*Hon. Selden P. Spencer*, Judge.

AFFIRMED.

### STATEMENT.

Defendant has a double street railway track on Easton avenue running east and west in the city of St. Louis. Easton avenue is crossed at right angles by Euclid avenue running north and south. On December 6, 1900, plaintiff's teamster was driving plaintiff's

three-horse wagon south on Euclid avenue, the driver being seated on the wagon. When he reached Easton avenue he turned the lead horse in a southeasterly direction for the purpose of crossing to the south side of Easton avenue and then proceeding east thereon. When his lead horse reached the south railway track on Easton avenue, it was struck by a car traveling east and the horse and his harness were badly damaged. This suit is to recover this damage.

The defense was contributory negligence.

On the part of plaintiff the evidence tends to prove that as soon as the driver cleared the building line on Easton avenue he looked and listened for a car on the south track but neither saw nor heard one; that his vision was partially obstructed by a west-bound car that had stopped on the northwest corner at the intersection of Euclid and Easton avenues for the purpose of discharging passengers, and that the noise of his wagon and the west-bound car interfered with his hearing; not seeing or hearing a car on the south track he proceeded to cross the street in a southeasterly direction; that the car traveling east on the south track gave no warning signal as it approached the crossing and was running at a high and dangerous rate of speed; a speed of from eighteen to twenty miles an hour.

On the part of defendant the evidence tended to prove that the car was running on a down grade at a moderate speed with the power shut off; that the gong was continuously sounded as the crossing was approached; that the night was dark and rainy but the car was brilliantly lighted; that Easton avenue is sixty feet wide, and that space between the building lines is eighty feet; that the driver could have seen the car after he entered the avenue and passed beyond the obstruction caused by the standing car before his lead horse had reached the south track if he had looked.

For the plaintiff the court gave the following instructions:

"If the jury find and believe from the evidence that on December 6, 1900, the defendant was operating a street railway by means of electricity along Easton avenue, in the city of St. Louis, and was running its cars along said avenue in charge of a motorman and conductor; and if the jury further find and believe from the evidence that on said date plaintiff's wagon was being driven by plaintiff's driver southwardly along Euclid avenue, and was proceeding to cross Easton avenue from the north side thereof toward the south side thereof, at its intersection with Euclid avenue; and if the jury further find and believe from the evidence that while plaintiff's said wagon was so proceeding to cross Easton avenue, an east-bound car in charge of defendant's servants ran into the lead horse attached to said wagon and injured plaintiff's said horse and its harness; and if the jury further find and believe from the evidence that at the time of, and immediately prior to such injury said east-bound car was permitted to run at a rate of speed which was excessive and dangerous to persons and animals crossing Easton avenue at said point, or that the motorman failed to give any notice or warning of the approach of his car; and if the jury further find and believe from the evidence that said rate of speed or said failure to give warning was negligent under all the facts and circumstances detailed in the evidence and under these instructions, and that but for such negligence said injury would not have happened; and if the jury further find and believe from the evidence that plaintiff's said driver at the time of said injury was exercising ordinary care for the protection of his team in so driving across Easton avenue then the jury will find a verdict in favor of the plaintiff.

"What constitutes 'ordinary care' as mentioned in these instructions depends on the facts of each particular case. It is such care as a person of ordinary prudence would exercise (according to the usual and general experience of mankind) in the same situation and

circumstances as those of the person or persons in this case with reference to whom the term 'ordinary care' is used in these instructions. The omission of such care is negligence in the sense in which that word is used in these instructions.

"If you find for the plaintiff, you will assess its damages at such sum, not exceeding two hundred dollars as will reasonably compensate plaintiff for the damage to plaintiff's horse and harness, and for plaintiff's expenses for medical services, feed, care and attention to said horse, and for the loss to plaintiff from being deprived of the use of said horse.

"If your verdict is for the defendant, you will simply so state in your verdict."

For the defendant the following:

"1. The court instructs the jury that plaintiff's petition charges that its servant was on December 6, 1900, about 8 p. m. driving his stake wagon drawn by three horses, one of them being in the lead, south on Euclid avenue, and that at the intersection of Euclid and Easton, while said wagon was being driven from the north side towards the south side thereof, an eastbound car of the defendant company struck said lead horse. The negligence charged against said defendant is: first, that said car while approaching said crossing was being operated at an excessive and dangerous rate of speed to persons and animals crossing Easton avenue at its intersection with Euclid: second, that the motorman thereof failed to give any warning of the approach of said car on Euclid avenue. The court instructs you that in regard to those allegations of negligence the burden of proof is upon the plaintiff to show by the preponderance or greater weight of the evidence that said accident was caused by either one or both said alleged acts of negligence. By burden of proof is meant that the evidence to sustain a proposition thus to be proved is greater in weight and credibility in your judgment than the evidence to the contrary.

"2.   The court further instructs the jury that it was the duty of plaintiff's driver to both look and listen for an approaching car just immediately before driving across defendant's track, no matter whether defendant's servants on said car gave the signals or not, and no matter at what rate of speed said car was running.   And if from the evidence the jury believe that said driver failed to both look and listen just before crossing said track, and thereby materially contributed to the collision between the car and the horse, then your verdict should be for the defendant.

"3.   The court instructs the jury that if from the evidence they believe that both plaintiff's driver and the servant of defendant operating defendant's car were both guilty of negligence, and that the negligence of plaintiff's driver materially contributed to the injury, then your verdict shall be for the defendant." '

The jury returned a verdict for plaintiff and assessed his damages at $168.75.

After an ineffectual motion for a new trial defendant appealed.

*Boyle, Priest & Lehmann* for appellants.

(1)   The demurrer to the evidence should have been sustained.   The evidence for both plaintiff and defendant disclosed that the car could have been seen by the driver if he had looked.   It could have been heard if he had listened.   He neither looked nor listened, but on a dark and rainy night drove on the track only a few feet in front of a moving car without looking to see whether a car was approaching or giving any heed to his surroundings.   This is such negligence as precludes a recovery.   Schmitt v. Railroad, 149 Mo. 287; Hogan v. Railroad, 150 Mo. 36; Vogg v. Railroad, 135 Mo. 440; Huggart v. Railroad, 134 Mo. 673; Lane v. Railroad, 132 Mo. 27; Weller v. Railroad, 120 Mo. 648. (2) This rule is not changed by the fact that plaintiff

testifies that he looked for the car, but saw it not; such evidence, in the face of the indisputable evidence, and the physical facts that, had he looked, he could have seen, at the very lowest estimate, the car over ninety feet away, with no obstruction between him and it, before he drove onto the track, and in ample time to have avoided the accident, has no probative force. "It will be disregarded as testimony by the court." Kelsey v. Railroad, 129 Mo. 362; Lane v. Railroad, 132 Mo. 27; Baker v. Railroad, 122 Mo. 589; Payne v. Railroad, 136 Mo. 575; Hook v. Railroad, 162 Mo. 581; Heckman v. Railroad, 47 Mo. App. 65; Weaver v. Railroad, 60 Mo. App. 210. (3) It will not do for plaintiff to say that, inasmuch as his driver looked once, he was exonerated from looking again. This duty is continuous until the dangerous locality is passed. Kelsey v. Railroad, 129 Mo. 362; Jones v. Barnard, 63 Mo. App. 501; Moberly v. Railroad, 98 Mo. 183; Hayden v. Railroad, 124 Mo. 566; Drake v. Railroad, 51 Mo. App. 562. (4) The demurrer to the evidence should have been sustained, because the evidence shows no causal connection between the alleged negligence of defendant and the injury to the plaintiff. "The connection between cause and effect must be established." Stanley v. Railroad, 114 Mo. 624. (5) "In every case the plaintiff was required to go further and show that the negligence was the proximate cause of the injury." Murphy v. Railroad, 153 Mo. 261.

*Sale & Sale* for respondent.

(1) The demurrer to the evidence was properly overruled. Where street car tracks are in close proximity, to run a car in one direction, on a down grade, at rapid speed, and without signal, past an intersecting street, while a car bound in the opposite direction is discharging passengers at such street, and where the view of the approaching car is obstructed by the stand-

ing car, is evidence of negligence, and there was no proof in this case that the plaintiff's driver did not use ordinary care in looking and listening before driving his horse upon the south track. Schmidt v. Railroad, 163 Mo. 645; Railroad v. Robinson, 127 Ill. 9; s. c., 4 L. R. A. 126; Railway v. Snell, 54 Ohio St. 197; s. c., 32 L. R. A. 276; Smith v. Union Trunk Line, 45 L. R. A. 169; Woehrle v. Railroad, 52 L. R. A. 348. (2) The instructions given by the court covered all the issues presented, hence no error was committed in refusing the instructions offered by defendant. (3) The refusal of defendant's nine instructions was justified by their number, in view of the simple issues of this case. Desberger v. Harrington, 28 Mo. App. 632; Renshaw v. Ins. Co., 33 Mo. App. 394; Hannibal v. Richards, 35 Mo. App. 15; Girard v. St. Louis Car Wheel Co., 46 Mo. App. 79; Blanton v. Dold, 109 Mo. 64.

BLAND, P. J.—It is the law here and elsewhere that it was the duty of plaintiff's driver before he attempted to drive across Easton avenue to look and listen according to his opportunity for an approaching car on the south track and that this duty was continuing until he passed the track. Hayden v. Railroad, 124 Mo. 566; Kelsay v. Railroad, 129 Mo. loc. cit. 372. And if the car on the northwest corner obstructed his view when he first got on the street, after passing that obstruction it was his duty then to look for an approaching car before driving on the south track. Lien v. Railroad, 79 Mo. App. (K. C.) 475. And the court, in plaintiff's instruction, should have specifically stated the care plaintiff's driver was bound to exercise before driving upon the south track. Instead of doing this the jury were instructed in general terms that if they found the driver was exercising ordinary care, etc., to find for the plaintiff. The law has established specifically what is "ordinary care" in a traveler approaching a railway crossing before attempting to pass over it, and

Sanitary Dairy Co. v. St. Louis Transit Co.

it is the duty of trial courts, whenever the question is to be submitted to a jury, to define in the terms the law has laid down, what constitutes ordinary care, and not leave it to the jury to draw their own conclusions as to what ordinary care is in such circumstances.

The failure, however, of the court to specifically define ordinary care in plaintiff's instruction was cured by the second instruction given for the defendant, and if the jury gave due attention to that instruction, which we assume they did, they were not misled by the instruction given for plaintiff. As a whole, the instructions given fully and fairly present the law of the case.

It is contended that the defendant's instruction (offered and refused) in the nature of a demurrer to the evidence, should have been given. This contention is made on the assumption that the driver drove upon the track without looking or listening for an approaching car. This assumption is made in the teeth of the evidence of the driver, who swore that as soon as he had the opportunity to look and listen he both looked and listened, but did not see or hear any approaching car; that he could not, see on account of the darkness and could not hear on account of the noise made by the other car and his wagon. Other witnesses testified that had he looked he could have seen the car and the weight of the testimony seems to be that he could have seen the car had he looked before he drove upon the track. The veracity of the driver was a question peculiarly for the jury to pass on and is not open to review by us. The jury gave credence to his evidence and we have no authority to upset their verdict for the reason that we may think the jury gave undue weight to his evidence.

Discovering no reversible error in the record the judgment is affirmed. *Reyburn* and *Goode, JJ.,* concur.