## ASPHALT & GRANITOID CONSTRUCTION COM-PANY, Respondent, v. ST. LOUIS TRANSIT COMPANY, Appellant.

### St. Louis Court of Appeals, April 28, 1903.

1. **Practice:** PEREMPTORY INSTRUCTION: CONTRIBUTORY NEG-LIGENCE. A judgment for plaintiff, in an action for damages incurred by a collision of plaintiff's horse with a street car, should not be reversed on account of the refusal of the trial court to peremptorily instruct the jury to find for the defendant, unless, after giving plaintiff the benefit of the most favorable construction of all the evidence, no other reasonable conclusion can be arrived at, than that plaintiff's driver was guilty of contributory negligence in driving upon the track.

2. ———: REVIEW OF ACTION OF TRIAL COURT: PEREMPTORY INSTRUCTIONS. The appellate court is not precluded from reviewing the action of the trial court, in refusing to grant a peremptory instruction to find for defendant, even though the trial court may

have approved a verdict for the plaintiff, where the evidence is of such a character that the trial judge would have a plain duty to perform in setting aside a verdict as unsupported by the evidence.

3. **Contributory Negligence: STREET RAILWAYS: FAILURE TO WAIT AND LOOK FOR APPROACHING CAR.** In an action for damages caused by collision of plaintiff's horse with a street car, where the evidence of plaintiff's driver showed that if he had waited but a moment, until an obstructing car moved out of his line of vision, he could have seen the approaching car which caused the injury in time to have avoided it, but failed to wait, he was guilty of contributory negligence as a matter of law.

4. ————: **NEGLIGENCE OF DEFENDANT NO EXCUSE WHEN.** The negligence of defendant's motorman, whose car collided with plaintiff's horse, in failing to give any warning signal of his approach, does not excuse the negligence of plaintiff's driver in failing to look out for a car before attempting to cross defendant's track.

Appeal from St. Louis City Circuit Court.—*Hon. D. D. Fisher,* Judge.

REVERSED.

*Boyle, Priest & Lehmann* for appellant.

(1) Not to look and listen is contributory negligence as a matter of law and is a bar to recovery. Haggart v. Railroad, 134 Mo. 673; Lane v. Railroad, 132 Mo. 27; Willer v. Railroad, 120 Mo. 648; Maxey v. Railroad, 113 Mo. 10; Boyd v. Railroad, 105 Mo. 381; Hudson v. Railroad, 101 Mo. 30; Maher v. Railroad, 64 Mo. 267; Fletcher v. Railroad, 64 Mo. 484; Harlan v. Railroad, 65 Mo. 22; Bell v. Railroad, 72 Mo. 50; Purl v. Railroad, 72 Mo. 160; Kelly v. Railroad, 75 Mo. 140. (2) A stationary car is not an obstruction which will relieve him from contributory negligence in not seeing the approaching car coming from the opposite direction. Buzby v. Philadelphia Traction Co., 129 Pa. St. 539, 17 Atl. 895; Smith v. Railroad, 29 Oreg. 539, 46 Pac. 136; Creamer v. Railroad, 126 Mass. 320, 31 N. E. 391; Grungard v. Railroad, 75 N. E. 221; Mayor v. Railroad, 6

Mo. App. 27; Hanselmann v. Railroad, 88 Mo. App. 122; Baltimore Traction Co. v. Helms, 1 Am. Neg. Rep. 63.

*Arthur E. Kammerer* for respondent.

(1) Appellant's demurrer to the evidence was properly overruled. The facts established justified the action of the trial court in submitting the case to the jury. Petty v. Railroad, 88 Mo. 315; Bluedorn v. Railroad, 108 Mo. 449; Baker v. Railroad, 122 Mo. 544; Tesch v. Railroad, 108 Wis. 593; Weller v. Railroad, 120 Mo. 648; Winters v. Kansas City Cable Co., 99 Mo. 509; Kenney v. Railroad, 105 Mo. 285. (2) The presumption is that plaintiff performed his full duty, and at the time was in the exercise of due care, until the contrary is made to appear. And this presumption is not overthrown by the mere fact of injury. Buesching v. St. Louis Gas Light Co., 73 Mo. 233; Stepp v. Railroad, 85 Mo. 236; Flynn v. Railroad, 78 Mo. 212. (3) In reviewing a ruling upon a demurrer to the evidence, the plaintiff should have the benefit of the most favorable view of his case, and is entitled to the benefit of all the facts before the court, as well as to every reasonable inference therefrom. Hamman v. Central C. & C. Co., 156 Mo. 243; St. Louis v. Railroad, 114 Mo. 18; Burbridge v. Kansas City Cable Co., 36 Mo. App. 679; Donohue v. Railroad, 91 Mo. 360.

BLAND, J.—From a judgment in favor of defendant, recovered before a justice, plaintiff appealed to the circuit court, where on a trial *de novo* plaintiff (a corporation) recovered judgment for $250. From this judgment defendant appealed to this court.

At the close of plaintiff's evidence and again at the close of all the evidence, defendant moved the court to instruct the jury that plaintiff was not entitled to recover. The court refused to give these instructions.

Defendant insists that the court erred in refusing these instructions for the reason that the evidence conclusively shows that plaintiff's servant was guilty of such contributory negligence as to preclude its right of recovery.

The admitted facts are that John Schaefer, in the employ of plaintiff, was, on January 9, 1900, driving plaintiff's two-horse wagon east on Arsenal street in the city of St. Louis; that when he arrived at Broadway he halted his team to let a south-bound car pass him; that this car stopped at the south crossing of Arsenal and Broadway to let two passengers alight; that as soon as the car passed him, Schaefer proceeded to cross over the street and that when the fore feet of his horses struck the east track, he discovered a north-bound car on this track close upon him; that he jerked his horses to the left to get them off the track to avoid a collision, but did not succeed in getting the off-horse off the track in time to avoid the car and the car struck him on the hip, tore him loose from the wagon and threw him into the street, breaking his back from which injury he died in twenty-five or thirty minutes; that the harness and wagon were damaged.

In respect to the occurrence, Schaefer testified as follows:

"I went down Arsenal street to get a load of granite on Barton and Kosciusko, and just as I crossed the track—went to cross—the car came going south; and I waited until the car was past, and when the car passed I went to go across; and I didn't see no car coming, and just as I got my horses' front feet on the track I happened to see the car coming from the south. I jerked the team around, and just as I pulled them around the horse was hit from behind by the car and throwed him over."

Schaefer further testified that the accident happened about eight o'clock in the morning; that there were no other vehicles in the street or about there at the time, that he saw.

"I just seen when I went to get on the track, I just

happened to look up and I saw the car coming the full speed, and just as I saw the car coming, I went to pull him around to the left and the car had hit the horse already; it came so fast I didn't have time to get the horse away from there.

"I never saw the car stop at all; I never looked at the car; I got hold of the horse as quick as I could, me and another man, because the horse was rearing and tearing around; I tried to get the harness off him."

He (Schaefer) also testified that he did not hear any bell rung; that if he had heard the bell he would have looked around; that no one from the car came back to see what had happened, and that he was very much excited. That there is a jog to the north in Arsenal street at Broadway nearly the width of the street, and he was driving northeast across Broadway when his horse was struck; that the car was nearly on him when he first saw it; that he did not notice the south-bound car stop at the crossing; that he stopped in Broadway opposite the northeast corner of Broadway and Arsenal with his horses' heads three or four feet from the south-bound car as it passed, and as soon as it passed he drove on across the street; that he looked before he started and saw no car coming from the south and did not look again for a car until the one that struck his horse was "on top of him."

Other witnesses for plaintiff testified that the north-bound car was running at a speed of from twenty to twenty-five miles an hour; that they did not hear any bell rung and that the motorman did nothing whatever to stop the car before it hit the horse, and that it run from two to three hundred feet beyond Arsenal street before it was stopped.

One of defendant's witnesses (H. F. Tacke) testified that he was a passenger on the north-bound car, sitting on the third seat from the front and first saw the horses' heads on the west track when the car was about seventy-five feet south of them and that the car was about twenty

feet away when the horses' feet first struck the east track.

The motorman and conductor in charge of the car and two of the passengers testified on behalf of defendant. They all agree that the car was running at an ordinary rate of speed, not exceeding eight or nine miles an hour; that its speed was slightly checked about the middle of the block south of Arsenal street and that from this point the bell was continuously rung and rung so loudly that one of the witnesses (Tacke) testified that he stopped reading his newspaper on account of the noise the bell was making. They all testified that the car was stopped within sixty to seventy feet after hitting the horses.

The motorman, in respect to the matter, testified as follows:

"I was due there at Arsenal, at the time the accident happened, about 7:50, I should judge; I was approaching the south-bound car, and it slowed up for some passengers to get off; I presume that was it. The rules are very strict about approaching another car, especially; you must sound your gong to prevent accident in case passengers should come out in front of you. I sounded the gong. That morning it was foggy, and the track was very slippery. I came down there sounding my gong, and when my car got—the front end of my car was up even with the front end of the other car—the first thing I saw was the horses' heads come out from behind the other car. I sounded my gong. I gave it two or three hard raps to draw his attention, and put on my brake, and the car was sliding then, and I put on my sand. The rails of the track were so slippery she slipped, and the car struck his horse. He came in back of the other car, I should judge, twelve or fifteen feet; and I was very close on to his horse before I saw it. My car, I presume, went—I went by him probably a car and a half length before I got my car stopped altogether.

My conductor went back and took the names of the witnesses, and tried to get the name of the driver.''

His evidence is corroborated by that of the conductor.

Plaintiff's witnesses testified that it had rained the night before and all agree that the morning was misty and damp.

1.   The judgment should not be reversed on account of the refusal of the trial court to peremptorily instruct the jury to find for the defendant, unless after giving the plaintiff the benefit of the most favorable construction of all the evidence and every reasonable inference in his favor that may be drawn therefrom, no other reasonable conclusion can be arrived at than that plaintiff's driver was guilty of such contributory negligence in driving on the track as to preclude its right of recovery.   Fisher v. Central Lead Co., 156 Mo. 479; Bank v. Bank, 151 Mo. 320; Baker v. Railway, 122 Mo. 533; Weller v. Railroad, 120 Mo. 635; Kenney v. Railway, 105 Mo. 270; Burbridge v. Railway, 36 Mo. App. 669; Clark v. Shrimski, 77 Mo. App. 166.

2.   The verdict of the jury received the approval of the trial court.   In this condition of the case it was ruled in Gannon v. Gas Co., 145 Mo. 502, that an appellate court can not hold that an instruction in the nature of a demurrer should have been given, without assuming the prerogatives which, under our Constitution and laws, belong to the jury, if the plaintiff made out a prima facie case.

In Dalton v. City of Poplar Bluff, 72 S. W. (Mo.) l. c. 1070, the court said:   ''Ordinarily, where the plaintiff produces parol evidence to support his action, the issue of fact should be submitted to the jury.   The evidence may be all one way, yet it is for the jury to say whether they believe the witnesses or not.   The court has no right to tell the jury they must believe the witnesses.''   This is unquestionably the law in this State.

In the case of Kries v. Railway, 148 Mo. 321, a verdict was returned by the jury for the plaintiff and a new trial was granted by the trial court. The Supreme Court in banc, in a unanimous opinion, held that the trial court should have granted a demurrer to the evidence for the reason that the evidence conclusively showed that the plaintiff was guilty of contributory negligence. And it has been repeatedly held that when the evidence is of such a character that the trial judge would have a plain duty to perform in setting aside a verdict as unsupported by the evidence, it is his duty and prerogative to interfere before submitting the case to the jury and direct a verdict. Hite v. Railway, 130 Mo. 132; Reichenbach v. Ellerbe, 115 Mo. 588; Jackson v. Hardin, 83 Mo. 175; Fuchs v. City of St. Louis, 167 Mo. l. c. 631; Burkholder v. Henderson, 69 Mo. App. 361. And we think that we are not, either by the Constitution or the controlling decisions of the Supreme Court, precluded from reviewing the action of a circuit court in refusing to grant a peremptory instruction to the jury to find the issues for the defendant, even though the jury may have found a verdict for the plaintiff and the trial court may have approved the same. It seems to us that in reviewing the evidence for the purpose of ascertaining whether or not such an instruction should have been given or refused, the court no more invades the prerogative of the jury to pass on the credibility of the witnesses and the weight of the evidence than it does in reviewing the evidence for the purpose of ascertaining whether or not there was evidence to warrant the giving or refusing of any other instruction found in the record.

3. It is well-settled law that if a plaintiff, in an action for damages to his person or his property alleged to have been caused by the negligence of defendant, convicts himself, by his own evidence, of contributory negligence, he can not recover. If, therefore, the evidence of plaintiff's driver conclusively shows that he was

guilty of contributory negligence, then plaintiff must fail in its suit.

Schaefer's evidence is that as soon as the south-bound car passed his team he drove on, but before proceeding he looked and saw no car and heard no bell and did not see the car until it was "on top of him."

There were no obstructions in Broadway to prevent Schaefer from seeing the car other than the south-bound car that had stopped at the corner of the street to let off passengers; in these circumstances the inference should be drawn that that car obstructed his view and prevented him from seeing the north-bound car at the time he drove on across the street. Should Schaefer have waited until the car traveling south moved on and gave him a clear view of the south track before undertaking to cross it? If so, then according to his own evidence, he was guilty of such negligence as precludes the plaintiff from recovering.

It is the universal law that one about to cross over a railroad track at a public crossing, upon which he knows (as did Schaefer) cars are being run at frequent intervals, is required to look and listen, according to his opportunities, for an approaching car before proceeding to cross the track, and a failure to discharge this duty is negligence as a matter of law. The care required to be exercised by one about to cross a railroad track, is reasonable care; when his view is obstructed by some stationary object, as a stationary car standing on the track, he is not bound to wait until the company moves the car away before venturing to cross. Dahlstrom v. Railway, 108 Mo. 539; Baker v. Railway, 122 Mo. 533. Whether or not, in such circumstances, he used due care, is not a question of law, but of fact for the jury. The car which probably obstructed Schaefer's view was not a stationary one, but was a moving one. Had he waited but for a moment it would have moved out of his line of vision and he would then have seen the approaching car and avoided the injury. It

seems to us that his failure to wait a moment to see whether or not a car was coming from the south on the east track, was negligence as a matter of law.    Buzby v. Philadelphia Traction Co., 17 Atl. (Pa.) 895; Berryhill v. Peabody et al., 75 N. W. (Minn.) 221; Turner v. Railroad, 74 Mo. 602; Boyd v. Railway, 105 Mo. 371; Weller v. Railway, 120 Mo. 635; Kelsay v. Railway, 129 Mo. 362; Baker v. Railroad, 147 Mo. 140; Jones v. Barnard, 63 Mo. App. 501; Hanselman v. Railway, 88 Mo. App. 123.

4.    The negligence of defendant's motorman, if he was negligent, in failing to give any warning signal of the approach of the car, or in running the car at a dangerous and excessive rate of speed, did not excuse Schaefer from the duty of looking out for a car before he undertook to cross the track.    Weller v. Railway, supra; Henze v. Railway, 71 Mo. 636; Baker v. Railway, 122 Mo. 533; Drake v. Railroad, 51 Mo. App. 562.    And the defendant is not liable, unless the evidence shows or tends to show that the motorman saw, or, by the exercise of strict watchfulness, could have seen, the perilous situation of the team of horses in time to have stopped the car and avoided the collision.

There is not a ray of evidence anywhere to be found in the record showing or tending to show in what time and space the car could have been stopped, in the condition the track was in, on the morning of the accident. Nor is there any evidence, except what was furnished by defendant's witnesses, as to what distance the horses were from the car when they could have been seen by the motorman.    Tacke testified that he first saw their heads when the car was about seventy-five feet south of them.    We may assume that the motorman, as his opportunity to see was as good or better than Tacke's, saw or had he looked could have seen them at that distance. But there is no evidence that the car could have been stopped in seventy-five feet; on the contrary, the evidence tends to show that it could not.    Plaintiff's wit-

nesses testified that it ran from two to three hundred feet after striking the horse before it was stopped. The evidence of defendant's witnesses is that the brakes were applied and the track sanded twenty feet south of the point of collision, and yet the car ran from sixty-five to seventy-five feet after it struck the horse, before it could be stopped.

In view of this evidence we see no room for the application of the last-fair-chance doctrine to the case, and reverse the judgment. *Reyburn, J.*, concurs; *Goode, J.*, dissents.