FECHLEY, Appellant, v. SPRINGFIELD TRAC-TION COMPANY, Respondent.

St. Louis Court of Appeals, May 8, 1906.

1. **CONTRIBUTORY NEGLIGENCE:** Looking and Listening. Unless the conditions are exceptional, the law requires a person about to drive across a car track to look and listen for cars before doing so; the omission of the street railway company to sound an alarm does not excuse the traveler from taking such precaution.

2. ————: Imputing Negligence. Where one was riding in the buggy of another who was driving and not under the control of the first, the negligence of the driver will not prevent the other from recovering from a third party damages inflicted by a collision which was caused by the negligence of such third party.

3. ————: ————: Limits of Rule. But if the passenger in such case becomes aware that there is danger of a collision and that the driver is remiss in guarding against it, he is negligent if he fails to take reasonable care to avoid it himself and cannot recover if he is injured by reason of his want of such care.

4. ————: Pleading. Where the answer, in an action for damages on account of personal injuries caused by the negligence of the defendant is a general denial, contributory negligence cannot be available as a defense unless the plaintiff's testimony shows so clearly he was negligent in a manner which contributed to his injury that the court will be warranted in denying him a recovery.

5. ————: **Looking and Listening.** Where one riding with another in the latter's buggy as it started across two parallel-street railway tracks upon which a car should be expected to approach at any moment, did not look or listen or take any precaution to ascertain if a car was approaching, when he could see that the driver was not taking sufficient precaution to ascertain if a car was approaching, he was guilty of contributory negligence which would prevent a recovery for injuries received by an ensuing collision with a car.

6. ————: **Practice: Harmless Error.** Erroneous instructions, in an action for damages on account of personal injuries, given for defendant are immaterial where the evidence would justify a legal conclusion that plaintiff was guilty of such contributory negligence as to cause the injuries sued for.

Appeal from Greene Circuit Court.—*Hon. Jas. T. Neville,* Judge.

AFFIRMED.

*A. H. Wear* and *J. T. White* for appellant.

(1) Contributory negligence is an affirmative defense and must be pleaded by answer before the defendant can avail itself of such defense. (a) It could not introduce evidence to show contributory negligence without so pleading. Schlereth v. Railroad, 96 Mo. 514; 10 S. W. 66; Donovan v. Railroad, 89 Mo. 147; McCormick v. Monroe, 64 Mo. App. 200; Hudson v. Wabash, 101 Mo. 30, 14 S. W. 15; Stone v. Hunt, 94 Mo. 475, 7 S. W. 431; Hughes v. Railroad, 127 Mo. 447, 30 S. W. 127; Parsons v. Railroad, 94 Mo. 294, 6 S. W. 464; Thorpe v. Railroad, 89 Mo. 650; Mitchell v. Clinton, 99 Mo. 158, 12 S. W. 793. (b) And it was error to give instructions submitting such issue to the jury in the absence of such pleading. Keitel v. Cable Co., 28 Mo. App. 663; Buesching v. Gaslight Co., 73 Mo. 229; Engleking v. Railroad, 187 Mo. 164, 86 S. W. 89; Mathews v. Railroad, 26 Mo. App. 79; Milburn v. Railroad, 86 Mo. 109; Chaney v. Railroad, 176 Mo. 606, 75 S. W. 595. (c) The negligence

of the driver of a vehicle cannot be imputed to one riding with him, unless such driver is in the employ or under the control of the latter.   Dickson v. Railroad, 104 Mo. 504, 16 S. W. 831; Becke v. Railroad, 102 Mo. 548-9, 13 S. W. 1053; Baxter v. Transit Co., 103 Mo. App. 608-9, 78 S. W. 70; Sluder v. Transit Co., 88 S. W. 654; Munger v. Sedalia, 66 Mo. App. 628; Profit v. Railroad, 91 Mo. App. 374-5; O'Rourke v. Railroad, 142 Mo. 354, 44 S. W. 254.   (2)   The degree of care required of a motorman in the management of his car, and the speed at which he may run without negligence, depends upon circumstances.   On a crowded street a greater degree of care is required than on a street comparatively free from travel.   Story v. Transit Co., 108 Mo. App. 430, 83 S. W. 992; Van Natta v. Railroad, 133 Mo. 19, 34 S. W. 505; Holden v. Railroad, 177 Mo. 456, 76 S. W. 973; Fry v. Transit Co., 111 Mo. App. 324, 85 S. W. 960; Kube v. Transit Co., 103 Mo. App, 582, 78 S. W. 55; Murray v. Transit Co., 108 Mo. App. 501, 83 S. W. 995.

*Delaney & Delaney* for respondent.

(1)   It is the duty of one about to drive upon the tracks of an electric railway to look and listen.   This means to look and listen, in fact; to look and listen in such a way as to discover danger if it exist; to look and listen in such a manner as a reasonably prudent man would look and listen.   To look in the direction from which he knew car was liable to come, and under the circumstances of this case it was his duty to stop, look and listen.   McGauley v. Transit Co., 179 Mo. 583, 79 S. W. 461; Campbell v. Railroad, 175 Mo. 161, 75 S. W. 86; Payne v. Railroad, 136 Mo. 562, 38 S. W. 308; Yancey v. Railroad, 93 Mo. 433, 6 S. W. 272; Kelsey v. Railroad, 129 Mo. 369, 30 S. W. 339; Culbertson v. Railroad, 140 Mo. 35, 36 S. W. 834; Kreis v. Railroad, 148 Mo. 321, 49 S. W. 878; Maxey v. Railroad, 113 Mo. 1, 20

S. W. 654; Murray v. Transit Co., 176 Mo. 183, 75 S. W. 611; Moore v. Transit Co., 95 Mo. App. 728, 75 S. W. 699; Watson v. Railroad, 133 Mo. 246, 34 S. W. 573; Frank v. Transit Co., 99 Mo. App. 323, 73 S. W. 239; Dairy Co. v. Transit Co., 98 Mo. App. 20, 71 S. W. 726; Hickman v. Railroad, 47 Mo. App. 65; Smith v. Railroad, 52 Mo. App. 336; Caldwell v. Railroad, 58 Mo. App. 453; Sonnerfeld Co. v. Railroad, 59 Mo. App. 668; Bunyan v. Railroad, 127 Mo. 17, 29 S. W. 842; Weaver v. Benton-Bellefontaine Co., 60 Mo. App. 207; Grocer Co. v. Railroad, 89 Mo. App. 534. Not only was it his duty to look and listen when he turned to approach track, but his duty, was a continuing one until he crossed the danger track. Hayden v. Railroad, 124 Mo. 566, 28 S. W. 74. Not only is it the duty of one going on or across a street car track to look and listen before so doing but it is further incumbent that said looking and listening be done from a suitable place and position, and if one fails to do so and is struck by a car the accident must be ascribed to his own negligence. Kelly v. Railroad, 56 N. E. 285; Downey v. Traction Co., 161 Pa. St. 131, 28 Atl. Rep. 1019; 2 Thompson on Neg., 114. (2) Plaintiff was personally guilty of negligence in the same degree with Pierce. He knew the track was before him or should have known it as it was before his eyes. He knew electric cars were operated on said track. By the slightest degree of care he could have seen the approaching car clear back to its starting point at the switch. Under these circumstances he cannot close eyes to danger simply because another is doing the driving. In such case if the driver be negligent, his is a concurrent negligence. 2 Thompson on Neg., 299; Koehler v. Railroad, 66 Hun (N. Y.) 566; Slater v. Railroad, 71 Iowa 709; Kingston v. Musgrove, 116 Ind. 124; Mich v. Boeckling, 122 Ind. 39; Sheffield v. Telephone Co., 66 Fed. 164; Lando v. Munger, 89 Ala. 521; Carlisle v. Brisbane, 113 Pa. St. 552; Mills v. Armstrong, 13 L. R.

A. 1; Robinson v. New York, 66 N. Y. 10; Dyer v. Railroad, 355, 71 N. Y. 35; Township v. Anderson, 114 Pa. St. 643; Dean v. Railroad, 129 Pa. St. 514; Brickel v. Railroad, 120 N. Y. 290; 19 Am. and Eng. R. R. Cases 129; Dean v. Railroad, 18 Atl. Rep. 718; Burroughs on Neg., 58. (3) The negligence of Pierce, under the circumstances disclosed by the evidence in this case, is imputable to plaintiff even if plaintiff was not guilty of negligence. Where plaintiff has equal opportunity to avoid injury and where he can control or suggest, he cannot set idly and blindly and permit himself to be driven into danger. Beck v. Railroad, 102 Mo. 544, 13 S. W. 1053; Keitel v. Cable Co., 28 Mo. App. 657.

GOODE, J.—Appellant was injured by the collision of a street car operated by respondent's employees with a buggy in which he was riding, and instituted this action to recover damages. The petition charges that the casualty was caused by the negligent operation of the car without specifying particularly the acts of negligence. The accident occurred in the city of Springfield, Missouri, on Commercial street, an east and west thoroughfare, at a point in the block between Boonville and Campbell streets, two north and south thoroughfares. We shall state the facts according to the testimony for the appellant. Fechley was riding in a one-horse buggy belonging to a man named Pierce and driven by the latter. The day was rainy and the curtains of the buggy were down. An election was in progress and Pierce had voted early in the morning at a polling place on the south side of the town. He was interested in a candidate for the office of sheriff and endeavored to induce appellant to vote for that candidate. Appellant was not acquainted with the man and alleged this fact as a reason for not voting for him. Pierce offered to take appellant to the north side of the city and make him acquainted with the candidate, inviting Fechley to ride over in his buggy. Fechley ac-

cepted the invitation, got into the buggy and the two
proceeded northward on Boonville street. Pierce, who
was driving, was seated on the left side of the buggy
and Fechley on the right side. When they reached the
intersection of Boonville and Commercial streets, they
turned west along the south side of the latter street.
Parallel car tracks ran along Commercial street cover-
ing a space in the center of about fourteen feet. The
driveway between the curbs was about fifty-two feet
wide and it was twenty feet from the south rail of the
south track to the south curbstone. When appellant
and Pierce drove on Commercial street from Boonville,
they noticed a street car standing at the intersection
of the two streets on the north track on Commercial
street and headed west on that street. Pierce and Fech-
ley drove west on the south side of Commercial in a
trot until they reached a point nearly opposite a polling
place which stood on a lot on the north side of the
street. Pierce then turned diagonally across the track
toward the polling place, and when the buggy had
crossed the south track and the horse the north track,
a car coming along the latter track from the east struck
the buggy on its rear wheels and seriously injured
appellant, who was seated on the right side. The horse
was driven across the track in a walk. Pierce swore
that after crossing the south track and while his horse
was over the north rail of that track and ready to put
his fore feet down on the south rail of the north track,
he (Pierce) looked out of the buggy to see if a car
was coming and saw none; that he did not rise from
his seat but could see eastwardly along the track thirty
or forty feet; that the curtains of the buggy were on
and fastened; not loose and open; that there was a small
glass lookout in the back curtain of the buggy about
five inches long and two inches wide, but he did not look
through it to see if a car was approaching. Pierce
swore that his best judgment about when he looked for

a car was that he did so when the horse was crossing the north rail of the south track, with his fore feet about striking the south rail of the north track. The tracks were four feet and eight inches apart. Pierce said he looked out at the northeast corner of the buggy, leaning forward and looking around Fechley eastwardly along the street; that he did not tell Fechley, who was leaning back in the buggy at the time, what he was looking for; that after he looked for a car, the buggy had proceeded from six to twelve feet when the collision occurred. Fechley swore he did not look for cars at all; that when Pierce started to drive across the tracks he (Pierce) put his hand up and looked over like this (witness putting up his hand and indicating) and that was the last he (Fechley) knew; that he had lived in Springfield about twenty-three years; did not know there were double tracks on Commercial street, but knew cars were operated by electricity east and west on that street; that he did not see the car tracks as they approached them—was not looking for tracks and did not have anything to do with "the looking out;" that he knew a track was there and that they were going to cross it, and could easily have put his hand against the curtain and looked down the street; that he could have done so without getting out of his seat; that Pierce had his hand like this (indicating) and looked around just like that (indicating); that he (Fechley) guessed Pierce raised up with his head clear around the curtain; that Pierce put his head around his (Fechley's) body when looking eastward; that Pierce was a tall man and raised up out of the seat when he looked. Other witnesses testified regarding the accident, some of whom said they did not hear the gong sound or see the motorman make any attempt to stop the car prior to the collision. There was strong testimony to the contrary on both those issues and going to show the gong was sounded continually from the time the car left Boonville street;

that the buggy turned on the track too near the car
for a collision to be averted, and that the motorman
did all he could to stop.   One witness, an ex-motorman,
who qualified as an expert on the operation of cars run
by electricity, gave testimony going to show the distance
in which an electric car running at the speed the one
in question was, could be stopped, and tending to prove
it might have been stopped before reaching the buggy
after the danger of a collision should have been appar-
ent to the motorman, if, when the horse stepped on
the north track, the car was the extreme distance from
the buggy testified to by some witnesses.

Under the instructions given a verdict was re-
turned in favor of the company; from which judgment
this appeal was taken, appellant contending that the
rulings on the instructions were erroneous.

The testimony conclusively proves Pierce was
guilty of negligence, and if this were an action by him
there would be no difficulty in holding his negligence
would prevent a recovery because it proximately con-
tributed to the accident, unless the motorman, by ordi-
nary care, could have stopped the car in time to pre-
vent a collision after the danger to the buggy ought
to have been visible.   Pierce's own statement shows he
did not look for a car bound west on the north track
until his horse was in the very act of stepping over
the south rail of that track, when plainly it was too
late to avoid a collision by stopping the buggy.   Unless
the conditions are exceptional, the law requires a person
about to drive on a car track to look and listen for cars
before doing so.   [Sanitary Dairy v. Transit Co., 98
Mo. App. 20, 71 S. W. 726; Killian v. Railroad, 86 Mo.
App. 473; Damrill v. Railroad, 27 Mo. App. 202; Payne
v. Railroad, 136 Mo. 562, 38 S. W. 308; Kelsey v. Rail-
road, 129 Mo. 362, 30 S. W. 339; Butts v. Railroad,
98 Mo. 272, 11 S. W. 754.]   The precaution is required
in order that the person approaching the track may re-

frain from proceeding if there is danger, which purpose is not achieved by looking for a car or train after getting on the track. Neither did the omission to sound the gong excuse Pierce from the consequences of his own omitted or imperfectly performed duty. [Asphalt, etc., Co. v. Transit Co., 102 Mo. App. 469, 80 S. W. 741.] But Fechley was riding with Pierce in the latter's buggy, at his invitation and while he was driving, and cannot be denied redress if the motorman's negligence was the proximate cause of the injury received, on the ground that Pierce's negligence was also a proximate cause. Respondent's counsel insists that this rule of law ought not to be applied except when the negligent driver was in the employ of a common carrier engaged in conveying the injured party as a passenger, and that as Pierce was merely a casual and private carrier, appellant ought to be precluded from recovering because of Pierce's negligence. The precedents do not enforce the distinction invoked by respondent, but hold that under facts similar to those before us, the negligence of a driver who is not the servant or under the control of the injured party, will not prevent said party from recovering from a third party the damages inflicted by a collision which was contributed to by the negligence of the latter or his servant. [Robinson v. Railroad, 66 N. Y. 11; Burrough of Carlisle v. Brisbane, 113 Pa. St. 552; Dickson v. Railroad, 104 Mo. 491, 16 S. W. 381.] In our opinion counsel have attached undue importance to the question of imputing Pierce's negligence to appellant and thereby defeating this action; for the law of the point is clear beyond controversy.

Appellant himself must have been free from negligence proximately contributing to his injury or he is entitled to no damages, granting that Pierce's fault does not preclude a recovery and that the motorman's fault was a factor in bringing about the casualty. Few, if any, courts have held that an occupant of a vehicle may

entrust his safety absolutely to the driver of a vehicle, regardless of the imminence of danger or the visible lack of ordinary caution on the part of the driver to avoid harm. The law in this State, and in most jurisdictions, is that if a passenger who is aware of the danger and that the driver is remiss in guarding against it, takes no care himself to avoid injury, he cannot recover for one he receives. This is the law not because the driver's negligence is imputable to the passenger, but because the latter's own negligence proximately contributed to his damage.     [Marsh v. Railroad, 104 Mo. App. 577, 78 S. W. 284; Dean v. Railroad, 129 Pa. St. 514; Township of Crescent v. Anderson, 114 Pa. St. 643; Keohler v. Railroad, 66 Hun 566; Hoag v. Railroad, 111 N. Y. 179; Brickell v. Railroad, 120 N. Y. 290; 2 Thompson, Negligence, sec. 1620; Beach, Con. Neg., sec. 115; 3 Elliott, Railroads, sec. 1174.] It is insisted that the issue of appellant's contributive negligence is not in the case because not pleaded in the answer. Besides a general denial, the answer, as originally filed, set up a special plea in bar averring that the accident was occasioned solely and entirely by the negligence of appellant and of Pierce, and not by any negligence on the part of the company. A demurrer was sustained to that paragraph of the answer; improperly, we think. A charge of contributive negligence against Pierce would have stated no defense; but the answer averred not that Pierce's negligence contributed to cause the accident, but that it was the sole cause; and if this was true, the company is not liable. However, the general issue would have let in evidence on that question and it might not have been error to strike out as immaterial an averment that the injury was due to Pierce's negligence. The plea in bar contained more. If the casualty was caused in whole or in part by appellant's negligence, that fact was a good defense and the averment of it in the second paragraph of the answer was a good plea in bar. The plea having

been stricken out, the answer consisted of a general denial, which put in issue only the averments of the petition. With the pleading in that form, appellant's contributory negligence was no defense according to cases in this State, unless the testimony he introduced so clearly showed he was negligent in a manner which contributed to cause the accident, that the court would have been warranted in denying him a recovery. [McCormick v. Monroe City, 64 Mo. App. 197; Heitel v. Cable Co., 28 Mo. App. 663.] Therefore the question occurs whether, on the testimony for appellant, the court would have been justified in holding him guilty of contributory negligence; and we hold that such a ruling would have been proper. Appellant swore he knew cars were operated east and west on Commercial street, but did not know there were double tracks on it. The two tracks were right before his eyes as he drove down Commercial street and as Pierce turned the horse to cross them. He said he could have looked out of the buggy by merely pushing the curtain back with his hand. He was not bound to do this if Pierce's conduct was of such a character as to induce a reasonably prudent man to think there was no danger in driving across the tracks. But Fechley did not have the right to rely on the precaution taken by Pierce, unless, under the circumstances, a man of ordinary prudence would have relied on it. As we have pointed out, the testimony shows Pierce took no precaution which could be effective. He did not stop at all; nor did he look for a car until the horse was stepping over the south rail of the north track. The two tracks were less than five feet apart and the buggy moved but a few feet after Pierce looked, before the car struck it near the front of the rear wheels. Meanwhile Fechley was leaning back in the buggy, though he must have seen they had crossed the south track and were advancing diagonally on the north one, and, if he was paying any attention to the

situation, must have known that a car was likely to come along on that track from the east.   Pierce's behavior was so grossly careless, that Fechley was imprudent in doing nothing personally to insure his safety. The essential fact is that Pierce did not look in time, as Fechley knew, or, in reason, ought to have known. Therefore Fechley should have stopped Pierce or told him to look for a car, or have looked himself, before they had advanced so far into danger.   It is palpable from appellant's own testimony that he was giving no heed to his safety, but either was relying blindly on Pierce, or, for some reason, was not aware of the proximity of the tracks.

In Hoag v. Railroad, 111 N. Y. 1991 it appeared that a husband and wife were sitting on the same seat in a vehicle driven by the husband and both were killed in a collision at a crossing.   The court said the wife had no right, because her husband was driving, to omit any reasonable precaution required to see for herself that the crossing was safe.   Our ruling is that a passenger under those circumstances, has a right to rely on the precaution taken by a driver, provided that precaution would strike a reasonable mind as adequate.

In Dean v. Railroad, 129 Pa. St., the facts were that Dean was struck by a locomotive at a crossing, the negligence complained of being that no warning was given of the approach of the locomotive, by bell or whistle, though the train was running at a high speed. Another man owned the team and wagon and was driving.   The driver had failed to look for trains before going on the track, which negligence was not imputed to Dean.   But Dean was familiar with the locality, had crossed the tracks frequently, knew a train was due about the time they reached the crossing, saw the driver was approaching the track at a trot, without looking

119 App.—24

for a train, and, under these circumstances did nothing to insure his own safety, he was denied a recovery.

In Township of Crescent v. Anderson, 114 Pa. St., Mrs. Anderson was in a spring-wagon driven by her father. She was seated on the rear seat and her father on the front one. She had two children in her arms and a third one at her breast. Her father drove across a bridge that was plainly dangerous and, in ascending the bank, the seat on which Mrs. Anderson was sitting was jostled so that it threw her and the children into a ravine. It was held that the danger which was obvious to her father, was obvious also to her, and as she made no request that another route be taken or objected to going over the bridge, she was negligent herself and responsible for the consequences.

Other authorities of the same tenor and in point are: Griffith v. Railroad, 44 Fed. 574; Aurelius v. Railroad, 19 Ind. App. 584; Miller v. Railroad, 128 Ind. 97; Lake Shore Railroad v. Boyts, 16 Ind. App. 640.

On the testimony for appellant the case strikes us as one of concurrent negligence; for the buggy had not gone more than from six to twelve feet after Pierce looked for a car, until the collision occurred. There is an inconsistency in appellant's theory. He would have it that there was an appearance of danger of a collision which should have warned the motorman, as soon as the buggy was turned to go over the tracks and before Pierce looked for a car, but that appellant himself was not negligent in failing to guard against this apparent danger. That argument for appellant emphasizes and makes clear his own carelessness. The counsel in the case give several close calculations in support of their respective theories, and appellant's attorneys endeavor to demonstrate that the motorman could have stopped the car before it reached the buggy, if he had begun to get control of it when the horse turned

to go over the south track. They insist that appellant, though he may have been guilty of contributory negligence, was entitled to a finding by the jury, under proper instructions, on the issue of whether or not the motorman could have prevented the accident after the turn, it being assumed that the danger of a collision then became apparent. The court submitted that issue by a charge which was extremely favorable to appellant. The jury were told it was the duty of the motorman to keep a constant lookout for persons approaching the track; and, on the approach of a person or vehicle near the track with the apparent purpose of crossing, to use every means in his power, consistent with the safety of his passengers, to stop the car and avoid a collision; that if the injury was caused by the failure of the motorman to keep such constant lookout, or to use the means within his power to stop the car, the company was liable for the injury to appellant. No complaint is made of that charge, the assignments of error relating to other matters; chiefly to the submission of the issue of appellant's contributory negligence and to an instruction which required extraordinary care of a person about to go on a railway track. If erroneous rulings were made on those issues, the errors become immaterial in view of our decision that the court would have been justified in holding, as a legal conclusion from the evidence for appellant, that he was guilty of contributory negligence. The one ground on which a verdict in appellant's favor might be upheld, and the only ground of recovery submitted, was negligence on the part of the motorman in handling the car after the danger of a collision was apparent. As said, this issue was well submitted.

Complaint is made of the refusal of the court to instruct regarding the right of appellant to use the street, and that the degree of care the carmen were bound to exercise was to be determined with reference

to the presence of a crowd of men around the election booth in the street. Suffice to say as to this instruction, that the election booth was not in the street, but north of it; that there was no proof a crowd of persons was in the street, and if there had been, appellant was not one of the crowd. Men were around the polling place outside the street. Neither was there any contest regarding the right of appellant and Pierce to drive along the street and on or across the car tracks. Those instructions were abstract; whereas the charge given on the only material issue, presented the matter to the jury in a practical way.

The action was for common law negligence, no violation of a city ordinance being alleged. Hence the court committed no error in excluding an ordinance offered by appellant. The verdict was fully supported by the evidence, the case was left to the jury on the only possible ground of recovery by a sound instruction, and the judgment will be affirmed. All concur.